[Crim. No. 2598. Third Dist. Sept. 28, 1955.]

THE PEOPLE, Respondent, v. E. C. WILDER, Appellant.

744

Albert H. Mundt and Thomas E. Smith for Appellant.

Edmund G. Brown, Attorney General, and G. A. Strader, Deputy Attorney General, for Respondent.

PEEK, J.—By an indictment, defendant was charged with four counts of violation of Penal Code, section 72 (presenting false claims). The jury found him guilty as charged. He now appeals from the judgment of conviction, whereby he was granted probation subject to certain stipulated conditions, and from the order denying his motion for a new trial.

Defendant makes four main contentions: (1) That the evidence was insufficient to support the verdict; (2) that evidence of a highly prejudicial nature was erroneously admitted by the trial court over his objection; (3) that the court erred in failing to give certain instructions to the jury; and (4) that the court erred in ordering an amendment to the indictment.

The first count of the indictment alleged that on January 15, 1954, the defendant, with intent to defraud the Pacific Fire District, knowingly presented, for allowance and payment, to the district, to the Board of Fire Commissioners thereof and to James H. Hastings, Auditor of Sacramento County, a false and fraudulent payroll claim which defendant knew was false and fraudulent in that it included the names of two persons, M. James and L. Lotts, and alleged that each had performed services as a fireman in a certain amount, whereas in fact neither had performed any services for the district during the period covered by the payroll. Counts 2, 3 and 4 contained allegations identical with those in count one with the exception of the date of presentation and the amounts claimed, and alleged the crimes to have been committed on February 28, 1954; April 7, 1954; and April 30, 1954, respectively. At the commencement of the trial court's

instructions to the jury the first count of the indictment was amended to charge the commission of the crime alleged in that count on February 15, 1954, instead of January 15, 1954.

The record discloses that the defendant, at the time of the commission of the offenses charged in the indictment was the fire chief of the Pacific Fire District, Sacramento County. The district was governed by a board of three commissioners. As chief, defendant hired firemen, did all of the bookkeeping, prepared the payrolls and distributed the checks. During this period the district had an assistant chief, one full-time fireman and a number of volunteers. At the end of each of the months in question, appellant presented individually to at least two of the commissioners, for their signatures, a payroll listing the volunteer firemen who had performed services during the previous pay period. They were paid on the basis of the number of calls to which they had responded. Opposite the name of each fireman was the gross amount of pay to which he was entitled. One commissioner testified that when the payrolls in question were presented to him they did not contain the names of M. James and L. Lotts nor were they totaled. A second commissioner testified that no amounts appeared when he signed the payrolls. However, when they were subsequently presented to the county auditor, each payroll contained the names of M. James and L. Lotts, and the signature of defendant. County warrants were drawn for the amounts appearing after the names of each of the persons listed on the payroll and these checks were mailed to defendant who usually distributed them at a meeting of the volunteer firemen, by first reading aloud the names appearing on the warrants and then giving them to the persons named. At none of the meetings in question was the name of M. James or L. Lotts read or mentioned. All of the district personnel testified that they knew of no persons by the names of M. James and L. Lotts who performed any services for the district.

Two income tax withholding certificates were filed with the county auditor and introduced into evidence at the trial. One gave the name of L. Lotts and a nonexistent address. The other gave the name of M. James and an address which was that of a Mr. H. E. Wilkinson who testified that he had lived at that address for 19 years but that he had never heard of the name, M. James. The warrants made payable to M. James and L. Lotts for the months in question were cashed and returned to the county auditor's office and had endorsed

thereon the signatures of the payees and also the signature of "E. C. Wilder."

■ Defendant's first contention is primarily predicated upon the admitted facts that at the time the payrolls were presented to the commissioners for approval they were not false. Thus defendant contends that since he was charged with presenting false claims to the commissioners *and* to the district *and* to the county auditor, the evidence was insufficient to support the charge.

Although the record is not as complete as it might have been, we cannot say it is not sufficient to warrant the inferences which the jury obviously drew therefrom. The defendant, as chief of the district, performed all of the bookkeeping which included preparation and presentation of payrolls, and distributed the warrants drawn by the county auditor to the firemen at meetings of their association. There was testimony by the auditor and by his deputy that the payrolls were received through the mail; that warrants in favor of the persons named thereon were immediately prepared and mailed to the defendant. Lastly there were the cancelled checks showing the name of defendant as an endorser. From these facts the jury was amply justified in drawing the inferences that to the lists on the payrolls which were signed by defendant, he added the two fictitious names and then mailed such payrolls to the auditor's office; that the payroll checks which were mailed to him by the auditor's office were received by him in the due course of mail; and that from the fact the cancelled checks are endorsed with his name, such checks came into his possession and he, with knowledge of the fictitious character of the payees' names, M. James and L. Lotts, either signed their names or had some other person sign them and in turn then cashed such checks.

■ Additionally, in connection with his attack upon the sufficiency of the evidence to sustain his conviction, defendant complains that the prosecutor, in his argument to the jury, erroneously stressed most strongly and constantly defendant's failure to testify in his own behalf or to otherwise explain or deny incriminating evidence against him. He contends also that the prosecution's comment on his failure to testify was aggravated by the trial court when it interrupted the prosecution's argument to instruct the jury that the prosecution had a right to so comment. There can be no question but that by virtue of article I, section 13, of the California Constitution and Penal Code, section 1323, comment by the court and by counsel concerning such failure by a defendant is

authorized, and the jury is entitled to consider such circumstances in its deliberations.

It is defendant's next contention that the court erred in admitting over his objection two income tax withholding certificates commonly called "W-4 forms," one being in the name of M. James and the other in the name of L. Lotts. Defendant argues that these exhibits were improperly admitted in evidence because they were in no way connected with him.

█ As the court noted in *Moody* v. *Peirano,* 4 Cal.App. 411, 418 [88 P. 380], " 'No precise or universal test of relevancy is furnished by the law. The question must be determined in each case according to the teachings of reason and judicial experience . . .' " and as the court further said in that case, "The tendency of modern decisions is to admit any evidence which may have a tendency to illustrate or throw any light on the transaction in controversy, or give any weight in determining the issue, leaving the strength of such tendency or the amount of such weight to be determined by the jury . . ." █ The court in *People* v. *Billings,* 34 Cal.App. 549 at 552-553 [168 P. 396], in elaboration of the above comment held:

"The relevancy of proffered proof in a criminal case depends upon whether or not it tends to sustain a legitimate hypothesis of the guilt of the defendant, and, generally speaking, an incidental fact is relative to the main fact in issue when in accord with the ordinary course of events and common experience the existence of the incidental fact, standing alone or when considered in connection with other established facts, tends in some degree to make the main fact in issue certain. It is not necessary that such incidental fact should bear directly upon the main fact in issue, for it will suffice as a pertinent piece of proof if it can be said to constitute a link, however small, in the chain of evidence and tends thereby to establish the existence of the main fact in issue."

█ In light of the rule as enunciated in the cited cases, it would appear that the court did not err in admitting the two certificates in question. Certainly the exhibits tended in some degree "to constitute a link, however small, in the chain of evidence and . . . [tended] thereby to establish the main fact in issue." (*People* v. *Billings, supra.*) The evidence established without question that the names and addresses given on the forms were fictitious. Furthermore the auditor testified that his office would not issue a warrant unless the payee had filed such withholding form. These

facts all tended to show that someone had filed the same and that the filing thereof was connected with the presentation of the false payrolls. Additionally it should be noted that the trial court admonished the jury that the forms were admitted with regard to the auditor's testimony and with reference to the existence of the persons referred to as James and Lotts, and were to be considered and given such weight as the jury might decide to give them.

The defendant next contends that the court erred in failing to have instructed the jury, of its own motion, to the effect that all members of the jury must be in agreement on the particular act of which it believed the defendant guilty. It is his contention that since the indictment conjunctively charged him with presenting false claims to the "Pacific Fire District *and* to the Board of Fire Commissioners thereof *and* to James H. Hastings . . . the Auditor," the commission of any one of the acts would have constituted a violation of Penal Code, section 72, but that it cannot be ascertained from the verdict of the jury which of the three separate acts any particular juror believed the defendant to have committed.

"The question of whether a series of wrongful acts constitutes a single or multiple offense must in the last analysis be determined by the peculiar facts and circumstances of each individual case." (*People* v. *Stanford*, 16 Cal.2d 247, 251 [105 P.2d 969].) As previously noted, in the instant case the evidence is susceptible of the inference that the payrolls were made false after the defendant presented them to the commissioners and that his acts in presenting each payroll constituted one continuous proceeding necessary for him to carry out his single design to have the warrants issued and obtain the money represented thereby. There can be no question but that each count of the indictment charges the presentment of only one false payroll claim which constituted but one offense. The two cases relied upon by defendant concern prosecutions for violations of former section 141 of the California Vehicle Act, now Vehicle Code, sections 480-481, commonly referred to as the "hit-and-run" statute. Obviously, by reason of the particular wording of that statute, it is not applicable to the facts presented in this case.

Defendant's next contention is that the court further erred in the admission into evidence, for all purposes, of the four payroll claims and the eight warrants drawn pursuant thereto. In support of this contention he reiterates the charge he made with reference to his first contention; that is, the insufficiency of the evidence generally and in particular that it was

not shown that he knew of the alleged false entries; that he made or caused them to be made; that he presented the claims; or that he received and cashed the warrants. In concluding that the evidence was amply sufficient, we reviewed the same and the inferences which the jury reasonably could, and obviously did, draw therefrom. Any further discussion upon this point would be purely academic since defendant was found guilty of the crimes as charged.

■ Defendant's final contention is that over his objection, and in the presence of the jury, the court erroneously permitted an amendment to the indictment changing the date of the offense alleged in count one from "on or about the 15th day of January, 1954" to "on or about the 15th day of February, 1954." The record shows that the court, during the course of instructing the jury, noted the error in the date and called the same to the attention of counsel. The district attorney then moved that the indictment be amended "in order to conform to the proof that's been adduced here . . ." Following the statement by the court that the indictment would be amended, the district attorney added, "That is what the proof showed, Your Honor." Since the payroll in question was for the month of January, quite obviously it could not have been presented on the fifteenth day of that month. Furthermore the only evidence in this regard introduced at the trial showed that it had been presented on the fifteenth day of February, 1954. We find no substance in defendant's contention that the court in permitting the amendment virtually told the jury that there had been proof of the presentment of a false and fraudulent payroll on February 15, 1954, as charged in the indictment. The amendment in no way changed the offense charged. It merely corrected an obvious clerical error by changing the date of presentment—a fact which was not a material ingredient of the offense, nor was the particular day of the month of any importance. Even assuming that the expression "conform to the proof" should not have been used by the district attorney, it still cannot be said that a miscarriage of justice resulted from the correction of such an obvious error.

The order and judgment are affirmed.

Van Dyke, P. J., and Schottky, J., concurred.

A petition for a rehearing was denied October 11, 1955, and appellant's petition for a hearing by the Supreme Court was denied October 26, 1955.