[Crim. No. 7771.    Second Dist., Div. Two.    Apr. 17, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. BERNARD S. ROSSON, Defendant and Appellant.

Harry Gold for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and George J. Roth, Deputy Attorney General, for Plaintiff and Respondent.

HERNDON, J.—Appellant was charged with grand theft of an automobile belonging to the Hertz Corporation in violation of section 487, subdivision 3, of the Penal Code. By a second information appellant was charged with grand theft in the taking of $400 belonging to Fischer Plastics, in violation of section 487, subdivision 1, of the Penal Code.

The two informations were consolidated for trial. The jury returned a verdict of guilty of the two counts of grand theft. Appellant's motion for a new trial was denied. Probation was denied and he was sentenced to imprisonment in the state prison for the term prescribed by law, the sentences to run concurrently. He appeals from the order denying his motion for a new trial and from the final judgment.

On August 13, 1957, Hertz Corporation rented a 1957 Oldsmobile to appellant for a one-month period. The Hertz' representative filled in a printed rental agreement form and told appellant he was the only person who was authorized to use the car. Appellant signed the agreement. No payment was received from appellant at the time the agreement was made. Appellant did not return the car on September 13, 1957. It was returned to Hertz by the police on October 8, 1957. The rental due was $750. No payment was ever received by Hertz for the use of the car.

A day or two after September 13, 1957, Officer Slosson of the Los Angeles Police Department received information from the Hertz representative that the car was missing. Sometime prior to, or on October 8, 1957, Mrs. Helen Eldridge of San Diego talked to Officer Slosson by telephone and referred him to Mr. Lester Cohen. She gave him Cohen's telephone number. Officer Slosson contacted Cohen, obtained the keys from him and recovered the car from a parking lot in Los Angeles on October 8, 1957. He returned it to Hertz.

Appellant attempted to show, by way of defense, that he tried but was unable to return the car to Hertz, and that he never intended to permanently deprive the owner of the property. He testified that at the time he rented the car he was not told of any restrictions on its use; he indicated to the Hertz representative that someone else might use it;

two days after he rented it he loaned it to Lester Cohen, who was doing some electrical design work for him; Cohen thereafter kept the car for about two months; about a week after appellant loaned the car to Cohen he asked Cohen to take it back to Hertz; on August 26, 1957, he told Cohen it was necessary to return the car to Hertz and requested him to deliver it to Mrs. Eldridge at the Hollywood Roosevelt Hotel and she would return it to Hertz; Cohen said he would do so; Mrs. Eldridge was associated in the electrical material business with appellant.

It was stipulated that from August 30, 1957, until October 1, 1957, appellant was in custody in Las Vegas, Nevada, on a charge that was finally dismissed. Appellant testified that he was allowed one call; he called Mrs. Eldridge who told him that Cohen had returned the car to Hertz; after he returned to San Diego he learned the car had not been returned and on October 4 called Officer Slosson whose name he obtained from Mrs. Eldridge; he asked the officer why the car had not been picked up inasmuch as Mrs. Eldridge had reported it to him as a stolen car; Slosson replied that it had been taken care of.

In respect to the charge of grand theft of the automobile, appellant first contends that the court committed prejudicial error in excluding certain testimony of defense witness Helen Eldridge.

This witness testified that appellant had introduced her to Cohen and that she had occasion to contact Cohen regarding the use of a 1957 Oldsmobile. She was asked "When was the first time you contacted Mr. Cohen on that, if you recall?" Objection was sustained on the ground that it was not material. The court refused the request of appellant's counsel to approach the bench. His counsel then stated that the question was asked for the purposes of laying a foundation. The court replied, "There can't be a foundation for that. . . . We are interested in something that's material to the issues here, that's all."

Shortly thereafter the witness testified that while she did not see Cohen driving the car, she saw him when he was in possession of it. She was asked what the circumstances were. She testified that she met Cohen and some other people at the Hollywood Roosevelt Hotel for dinner on August 26, 1957; Cohen said he had the car; she asked him if he would give her the keys; he refused; the dinner party had been arranged by

appellant "for the explicit purpose of Mr. Cohen . . ." At this point in the testimony counsel for the prosecution stated he was going to object and the court commented that the testimony was "going far afield." The witness was then asked, "Did you say anything to Mr. Cohen about returning the car to Hertz?" Objection was sustained and the answer was stricken on the ground that the question called for hearsay.

At a later point in the questioning the witness testified that Lester Cohen had told her he returned the car to Hertz. She was then asked, "On what occasion was that?" She started to reply when counsel for the prosecution asked that her statement be stricken on the ground that it called for her opinion. The court denied the motion on that ground but granted it on the ground that it called for hearsay.

The witness further testified that in the latter part of September 1957, she called Officer Slosson on the telephone from her office in San Diego. Objection was sustained to the question "Now, will you relate what you told Lieutenant Slosson?" The ground of objection was that it called for hearsay. Objection was later sustained to the question "How many times have you called Lieutenant Slosson, Mrs. Eldridge?" The ground of objection was that it was not material or relevant.

On redirect examination the witness testified that appellant called her from Las Vegas. She was then asked what the conversation was. Objection to the question was sustained on the general ground that it was incompetent. On further direct examination, after the appellant had testified, the witness testified that she called Cohen on September 6, 1957. She was then asked what she called him about. Objection was sustained on the ground that the question was not material, relevant, called for hearsay and was incompetent. The same objection was sustained to the question "What prompted you to make the call?" Objection on the ground that it called for hearsay was sustained to the question "And as a result of that call did you learn whether or not the convertible automobile, this yellow convertible automobile was returned to Hertz?" Objection on the ground that it was incompetent, irrelevant and immaterial was sustained to the question "Did you inform Mr. Rosson [the appellant] of the outcome of your conversation with Mr. Cohen."

Appellant's counsel indicated that it was his purpose to introduce the offered evidence on the issue of appellant's *intent*. He was thereafter permitted to approach the bench. He attempted to show the relevancy of the testimony. He

offered to prove that two days after appellant rented the car he permitted Les Cohen to use it; that Cohen then held the car out, and that appellant made every effort "to obtain the car from Cohen ... through the assistance. ..." At this point he was interrupted by the court's comment, "If he took that car out and violated the contract that he made with this company by letting somebody else use the car, he's responsible for it."

The law is settled that where a defendant is charged with grand theft (Pen. Code, §§ 484, 487 and 490a), the district attorney is not required in advance of proof to elect whether he will proceed upon the theory of larceny, embezzlement or obtaining property by false pretenses. (*People* v. *McNeil*, 27 Cal.App.2d 353, 357 [81 P.2d 243]; *People* v. *Fewkes*, 214 Cal. 142, 149 [4 P.2d 538].) By the same token, a defendant is entitled to introduce any competent evidence that might tend to present a defense to any of the forms of theft. The jury was instructed on the distinction between the three forms of theft and told that if it found that appellant committed any of them it should return a verdict of guilty.

The jury could have found that when appellant took possession of the car he intended to return it, but that he subsequently conceived the intent to permanently deprive its owner and was therefore guilty of embezzlement. It is frequently said that under a charge of theft it is immaterial whether the fraudulent intent was formed before or after the offender obtained possession of the property, since the offense is theft in either case. (*People* v. *Martin*, 153 Cal.App.2d 275, 284 [314 P.2d 493].)

However, if a jury finds that the initial intent of the accused was not fraudulent, it has to decide the further question whether he subsequently conceived the intent to permanently deprive the owner of his property. Where a primary finding of fact by a jury will determine whether a further question must be decided, evidence which is material to the further issue may not be excluded if it is otherwise properly admissible. (See *People* v. *Chadwick*, 4 Cal.App. 63, 67 [87 P. 384, 389]; *People* v. *Wilder*, 135 Cal.App.2d 742, 747 [287 P.2d 854].)

Appellant himself testified that he called Mrs. Eldridge and asked her to obtain the car from Cohen and that Cohen refused to give it up. The testimony of Mrs. Eldridge would have shown the actions taken at appellant's request toward

obtaining the return of the automobile. Although it was cumulative of appellant's testimony in some respects, it was not cumulative as to her actions and, further, it was not cumulative in respect to its evidentiary weight. (See *People* v. *Carter*, 48 Cal.2d 737, 748-749 [312 P.2d 665].)

It is apparent from the record that the defense was attempting to show that certain actions were taken by Mrs. Eldridge as appellant's agent to accomplish the return of the automobile to Hertz. ▆▆▆ Evidence of appellant's continuing efforts to effectuate the return of the car, even after the due date, would likewise tend to prove that he continued to recognize the trust relationship and that a felonious intent was not subsequently formulated by him. We therefore hold that the evidence excluded was clearly relevant and material.

The question whether such evidence was competent remains to be considered. Respondent contends that the questions to which objections were sustained called in the main for hearsay and particularly that the contents of any conversations between the witness and Officer Slosson would be hearsay.

▆▆▆ ''There is a well-established exception or departure from the hearsay rule applying to cases in which the very fact in controversy is whether certain things were said or done and not as to whether these things were true or false, and in these cases the words or acts are admissible not as hearsay, but as original evidence.'' (*People* v. *Henry*, 86 Cal. App.2d 785, 789 [195 P.2d 478].) An issue in the case is whether the words themselves were uttered. (McCormick on Evidence (1954) p. 463; 6 Wigmore on Evidence (3d ed.) § 1770, pp. 185, 190.)

▆▆▆ Likewise, where the good faith of a party or the reasonableness of his conduct is in question, an extrajudicial statement upon which he relied or acted may be shown. Extrajudicial statements are, under certain circumstances, admissible to show why a person did certain acts. (*People* v. *Spivak*, 166 Cal.App.2d 796, 812-813 [334 P.2d 44].) In such case the statement is similarly not admissible to prove its truth, but it is admissible to show the mental state or attitude of the person who heard it. (See McCormick on Evidence (1954) p. 464; 6 Wigmore on Evidence (3d ed.) § 1789, pp. 235-237.)

▆▆▆ We think the record clearly indicates from the whole line of questioning and from the colloquies of court and counsel that the questions regarding the conversations were asked to show that appellant, through the agency of Mrs. Eldridge, made demands on Cohen to produce the car or

return it to Hertz and gave notice to the police that Cohen had the car and would not give it up. Its purpose was thus to show, not the truth of the statements made by the parties during their conversations, but merely that words of demand, refusal and notice were uttered, thereby showing that appellant made continuous efforts to get the car back to its owner.

It also appears that it was sufficiently clear to the court and counsel that the questions asked the witness with respect to her call to Cohen on September 6, 1957, were to show that the witness relied on Cohen's statement to her that he had returned the car to Hertz, and that she had relayed this information to appellant who, in turn, relied on it and as a result failed to take further action until he learned otherwise when he returned to San Diego.

After reviewing the evidence supporting the conviction of grand theft of the automobile, as set out previously, it is our conclusion that the guilt of appellant was a close question for the jury and that it is reasonably probable that a result more favorable to appellant would have been reached but for the error in excluding this admissible testimony; the error must therefore be regarded as prejudicial. (*People* v. *Watson*, 46 Cal.2d 818, 836 [299 P.2d 243].) Hence the conviction on that count must be reversed. In view of our conclusion that the exclusion of the testimony of Mrs. Eldridge was prejudicial error, the other assignments of error as to this count need not be considered.

We turn now to a consideration of the judgment on the second count. On December 2, 1957, appellant visited Karl Fischer at Fischer Plastics. This firm was engaged in the plastic injection molding business. Appellant presented a card bearing his name and the name "Zebra Corporation." The card contained two addresses, one in La Jolla and one in Beverly Hills. Appellant presented some paper cutout toys to Fischer and asked what he thought of them. Appellant told Fischer that he had a "deal with the Purina people in St. Louis" and they were going to use the toys as premiums with their food line. They discussed the manufacture of these toys by Fischer's company. Fischer quoted the cost of tooling for the toys and wrote a letter to the Ralston Purina Company in St. Louis quoting the cost of tooling. He gave the letter to appellant to present to the Ralston Purina Company in St. Louis.

Appellant then asked Fischer if he would take his check for $400 and give appellant one of the company checks in that

amount. He said that he had deposited some money in the bank but it would take two or three days for the check to clear. and that he needed the $400 to go to St. Louis immediately. Fischer gave him the company check for $400 which appellant subsequently cashed. Appellant gave Fischer his check for $400 on the City National Bank of Beverly Hills payable to Fischer Plastics. It was dated December 6, 1957. Fischer did not notice the date on the check. Appellant asked him to hold it for a couple of days so that it would be sure to clear. Fischer did so. When he put the check through for payment by the bank, it was dishonored.

Fischer expected appellant to return within about two weeks. When the check was returned from the bank, he attempted, without success, to call the Zebra Corporation. He tried to contact the La Jolla address through the telephone company but was unsuccessful in locating it. Thereafter, he turned the matter over to the Burbank Police Department for investigation.

The Ralston Purina Company was not offering any premiums with its cereal packages in 1957; it had discontinued the use of premiums in 1955. The Beverly Hills telephone number and address on the Zebra Corporation card were those of a telephone answering service. The only Zebra Corporation listed in the records of the Secretary of State of California was incorporated March 5, 1959, and it was a service station in San Francisco. Appellant was not associated with it.

An account in the City National Bank had been opened in appellant's name on October 14, 1957. It was closed on December 18, 1957. During that time, there was never any deposit in the account in the amount of $400 or more. From the time the account was opened until it was closed, there were 25 separate items indicating that one or more checks had been returned because of insufficient funds. On December 2, 1957, the account showed a balance of $5.05. On December 3, the account was overdrawn 84 cents and a debit memorandum was made against the account, indicating two checks had been returned. The bank's record showed at least five checks were returned on December 4, 1957, three were returned on December 6, two were returned on December 9, one was returned on December 10, and one was returned on December 12. There was no arrangement for credit to appellant by the bank.

With respect to his conviction on this count, appellant claims error in the exclusion of certain exhibits and certain portions of his testimony; also that the evidence is insufficient to support the judgment.

Appellant testified that he had seen Fischer several times in November 1957, prior to the date on which he obtained the $400, and that on one occasion, Fischer attended a meeting at an attorney's office where he was present, and some drafts were prepared of what "our arrangements were going to be . . . ." The court then interrupted, saying, "Let's get down to the issues in this case." Appellant's counsel then changed his line of questioning.

Appellant further testified that he merely told Fischer he would try to interest several people in the products to be made from the die which was to be prepared by Fischer; he did not go to St. Louis; he went to New York and contacted several advertising agencies. He complains that he was not permitted to answer a question as to the results of his trip to the East. However, no offer of proof was made by appellant's counsel either with respect to the meeting at the attorney's office or as to the results of the trip to the East.

Where on its face it cannot be determined whether the answer to the question posed is pertinent to the issues, and the court sustains an objection to it, counsel must either reframe the question or show the court the pertinency of the question, and the materiality of the answer, so that the court may correct its ruling. Failure to do so precludes consideration of the error on appeal. (*People* v. *Ratten*, 39 Cal.App.2d 267, 270-271 [102 P.2d 1097]; *People* v. *Danielly*, 33 Cal.2d 362, 376 [202 P.2d 18].)

Appellant complains that the trial court erred in excluding evidence that on the day following his receipt of Fischer's check for $400 he received the sum of approximately $900, out of which he intended to repay Fischer. The assignment is wholly without merit because the record discloses that the court admitted appellant's testimony as to his receiving the $900, what he *intended* to do with it, and what he *actually* did with it.

The assistant treasurer for the Marvin Electric Company was called as a witness for the defense. He testified that his company issued four checks aggregating $949.77, drawn payable to the order of Saigon, Aaron and Sandler, a firm of attorneys representing Marvin Electric Company, as follows: checks for (1) $89.67, dated October 7, 1957; (2) $160.10,

dated November 27, 1957; (3) $500, dated November 29, 1957; (4) $200, dated November 29, 1957. The witness was asked "For what purpose were those checks issued?" The court overruled the People's objection to the question and the witness answered: "The checks were issued for the purpose of paying Mr. Rosson certain commissions which he had earned."

When the witness was asked why the checks were made payable to the maker's law firm, he answered: "They were made payable to Saigon, Aaron and Sandler, to be held in trust for Mr. Rosson at the time." This answer was stricken on the ground that it was an opinion and conclusion of the witness. The court thereupon sustained an objection to an offer of the checks in evidence. Thereafter, the witness produced vouchers which were originally attached to the checks. These vouchers showed the purpose for which the checks were issued and indicated that they were made payable to Marvin's attorneys because some claims and garnishment proceedings against appellant were pending. The court overruled the People's objection to appellant's questions regarding the vouchers.

Appellant himself testified as follows: "Q. Now, Mr. Rosson, coming back to the act of your receiving $400 from Mr. Fischer. Did you receive any money on or about the 3rd day of December of 1957? A. Yes, I received $900 from the Marvin Electric Manufacturing Company. Q. And what did you do with that money? A. I gave it to my office manager, Miss Monroe, to cash the checks and to pay some bills and to bring me back $400 to repay Mr. Fischer. Q. Did your office manager bring the money back to you? . . . A. No. After he paid his bills he only had fifty dollars left, at which time I called Mr. Fischer and said I couldn't repay the loan." In view of the record here presented, we hold that the exclusion of the checks did not constitute prejudicial error.

As to the sufficiency of the evidence, it is argued that the record is devoid of any evidence showing appellant's intent to permanently deprive Fischer of the $400. ▉ The question of intent is entirely one of fact and may be inferred from the circumstances. (*People* v. *Deininger*, 36 Cal.App.2d 649, 652 [98 P.2d 526]; *People* v. *Alba*, 46 Cal.App.2d 859, 865 [117 P.2d 63]; *People* v. *Post*, 76 Cal.App.2d 511, 514 [173 P.2d 48].)

▉ The evidence, which the jury impliedly found to be true, proved: that appellant did not represent a bona fide corporation; that he lied when he represented himself as the

owner of the Zebra Corporation, a nonexistent entity; that he lied when he represented to Fischer that he had a "deal" with the Ralston Purina Company; that said company had long since discontinued the use of premiums; that appellant had not deposited money in the bank which would cover his checks; that he never went to St. Louis; that he never contacted Fischer again; that he could not be reached at the addresses he had given Fischer; and that he never made his check good.

This was more than ample evidence from which the jury could draw the reasonable inference that appellant fraudulently obtained the check for $400 from Fischer and cashed it with the intent to permanently deprive Fischer. Appellant's testimony that the transaction was a loan merely raised a conflict in the evidence. The point is without merit.

Appellant further contends that counsel for the prosecution was guilty of prejudicial misconduct in referring to appellant in his argument to the jury as a "con" man. The record shows that appellant neither made any objection to the remarks in question, nor did he move to strike or request any admonition. ■■■■ In a criminal case, where the prosecuting attorney, in the course of his arguments, makes inappropriate or prejudicial statements, counsel for the accused ordinarily is required to assign the statements as misconduct and ask that the jury be instructed to disregard them. If counsel fails to make the assignment, the error normally will be regarded as waived and will not be ground for reversal. (*People* v. *Hampton,* 47 Cal.2d 239, 241 [302 P.2d 300] ; *People* v. *Lyons,* 50 Cal.2d 245, 262 [324 P.2d 556].) ■■■■ Likewise, where misconduct of an attorney is relied on in a motion for new trial, it must be shown that objection was made as soon as the misconduct became known. (*People* v. *Gordon,* 78 Cal.App. 167, 171 [248 P. 289] ; *People* v. *Manes,* 104 Cal.App. 493 [285 P. 1073].)

We have read the argument, and, in the light of this record, it appears that if there was any misconduct, it was not of such a prejudicial nature that its effect could not have been obviated by a cautionary instruction. (*People* v. *Hampton, supra,* 47 Cal.2d 239, 241; *People* v. *Lyons, supra,* 50 Cal.2d 245, 262.)

As a further ground for his motion for a new trial, appellant submitted affidavits tending to show that a defense witness named Lane failed to appear at the trial. It appears that the witness was not under subpoena, but that he had agreed

to appear. Lane says in his affidavit that he telephoned the clerk of the court and "asked to speak to Mr. Propp." Significantly, he fails to state that he told the clerk he was a prospective witness. Propp's affidavit says that the message was not delivered, but neither affidavit states the date when Lane is supposed to have called. Appellant made no motion for a recess or a continuance. There is no showing whatsoever that any diligence was exercised in attempting to procure the attendance of the witness.

As to Count I, the judgment and order under review are reversed; as to Count II, the judgment of conviction and the order denying motion for a new trial are affirmed.

Fox, P. J., and Ashburn, J., concurred.

A petition for a rehearing was denied May 11, 1962, and appellant's petition for a hearing by the Supreme Court was denied June 13, 1962.