[Crim. No. 27503. Second Dist., Div. One. June 28, 1976.]

THE PEOPLE, Plaintiff and Respondent, v.
RICHARD ALAN DEMOND, Defendant and Appellant.

## COUNSEL

William L. Jacobson for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Edward T. Fogel, Jr., and Gary R. Hahn, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

HANSON, J.—Richard Alan Demond appeals his conviction of murder in the first degree (Pen. Code, § 187).

### THE FACTS

In September 1974, defendant Demond rented an apartment in a building managed by Cathleen Passen and told her that he would be living there with his girlfriend and her two children. On September 16, defendant Demond moved in with Lola Weisbach and her two children: three-year-old Robin and six-year-old Lisa. The children went to the local school and day care center while Lola worked during the Day. Defendant Demond, who was not working, remained at the apartment during the day and took care of the children there from the time the day care center

closed until their mother returned home. Cathleen Passen saw defendant Demond in and around the apartment area every day from September 16 through November 6, 1974.

In the early afternoon of November 6, Cathleen Passen and her husband, Terry, were in the apartment when defendant Demond came to the door carrying Robin and asked Mr. Passen to call an ambulance because "Robin has fallen down the stairs." Robin's hair was all wet and the Passens thought that she had fallen into the pool because they had not seen her near any of the outside stairs, had heard no cry, and knew there were no stairways within any of the apartments.

Robin was placed on the floor while Cathleen Passen called an ambulance, and Terry Passen lifted Robin's cotton T-shirt up to check her heartbeat and breathing. He detected a heartbeat and noted that she made a gurgling sound which sounded as though she were breathing out rather than gasping or taking in breath. The defendant said that he thought she was having a fit. However, Cathleen Passen examined Robin and said that she did not appear to be having a fit because she was not swallowing her tongue. At that time Cathleen Passen noted that Robin had a severe bump in the center of her forehead, bruises on her face, and two black eyes. Her husband also noticed the injuries, some discolored marks and bruises, and blood on Robin's lips.

The Passens were outside waiting for the ambulance when Mervil Dunham, ambulance attendant for the City of Los Angeles Fire Department, arrived. When they came in, defendant Demond said, "Her heart has stopped." Then the defendant picked up Robin and handed her to the ambulance attendant. Cathleen Passen saw that Robin's fingernails had turned purple and she believed she was dead. Mervil Dunham at first assumed Robin had been in the pool because her face and hair were wet but since her clothing was dry, he asked what had happened and was told that she had fallen down. At that time, she was not breathing and her heart was not beating. Despite Dunham's best efforts at cardiopulmonary resuscitation, both at the apartment and in the ambulance on the way to the hospital, Robin was dead on arrival at the hospital. David Wiley, the doctor on duty in the emergency room at Pacoima Lutheran Hospital, was present upon her arrival and pronounced her dead.

It was Dr. Wiley's opinion that Robin had been beaten to death; he based this opinion upon the fact that there were so many wounds of

varying ages all over her body which could not have resulted from a single accident. He believed that the child exhibited the battered-child syndrome reflecting trauma which had been inflicted over a period of time by some other person. He found a depression on the back of Robin's skull which appeared to be a fracture. He testified that the severe injury to Robin's forehead and the bruises he saw on her abdomen and chest appeared to be caused by "deliberate beating over a period of one to two weeks." He also observed severe massive bruises on Robin's abdominal area and declared that it was impossible such injuries could result from grand mal seizures, as defendant had suggested.

Dr. Yacoob Mall of the coroner's office performed an autopsy on Robin Weisbach. His examination revealed that she had multiple bruises of varying ages and he found a deformity of her lower right arm which was the result of a recent fracture of the bone. He testified that the little girl had suffered severe injuries to her head and to the abdominal cavity; these were the principal causes of her death which resulted from multiple traumatic injuries. She had suffered brain injury from a subdural hematoma and a serious injury to the pancreas which suggested that severe pressure had been applied externally to her abdominal area. The massive bruises on her abdomen were the result of the traumatic injury to the pancreas. Such an injury could have occurred accidentally only if the infant had fallen from a height of 20 feet striking a fixed object. Both injuries were very recent and Robin's death had resulted within an hour of the head injury. The doctor found multiple bruises on the side of Robin's face, most of them several days to a couple of weeks old, and multiple bruises of different ages on her torso. There were bruises on Robin's legs and some old bruises on her buttocks.

Both Dr. Wiley and Dr. Mall characterized these bruises and injuries as typical of the "battered-child syndrome," a condition which occurs when a child has been physically abused over a period of time. Both verified that a number of photographs which were introduced in evidence accurately portrayed the bruises and discoloration on and about Robin's head and face.

Lisa Weisbach, age six, testified that she had observed defendant Demond do various things to Robin when he was caring for the children. Once Robin wet her pants, and he covered her head with the wet pants so that she stumbled around blindly and bumped into a wall. He had thrown Robin into the air on one occasion and let her drop on the bed without catching her. He had also hit Robin, and Lisa as well, on the

back with his belt. The marks on Lisa's back were exhibited to the jury. On another occasion Robin had a bowel movement on the floor and defendant Demond made her eat it.

A school nurse who was on duty in the morning of November 4, 1974, when Robin was brought to the child care center, testified that she was not feeling well that day. The nurse examined her and found that she had a severe forehead injury and discolorations suggesting serious injury to the bridge of her nose and the corner of each eye. When the nurse asked if she felt any pain, Robin, who was completely nonverbal, did not respond but she did not cry. Robin seemed alert but apprehensive during the examination. The nurse sent to her home a form cautioning the parents about the head injury Robin had suffered.

## ISSUES

Defendant Demond contends as follows: (1) the evidence was insufficient to support his conviction; (2) the trial court erred in giving an instruction on murder by torture; (3) the trial court committed prejudicial error in admitting the six photographs of Robin Weisbach in evidence; (4) the testimony of Mrs. Simmons and Dr. Mall was improperly admitted in rebuttal; (5) objections to Dr. Robinson's testimony were improperly sustained; (6) the trial court erred in permitting the prosecution to display Lisa Weisbach's back to the jury; (7) the trial court erred in admitting Lisa Weisbach's testimony; (8) defendant Demond's motion for judgment of acquittal (Pen. Code, § 1118.1) was improperly denied; and (9) the trial court erred in denying defendant Demond's motion for new trial.

## DISCUSSION

### I

Although defendant Demond contends that the evidence was insufficient to support his conviction of murder, he concedes that the evidence was sufficient for the jury to find that Robin Weisbach's death was due to the acts of a person other than herself. He contends, however, that the facts proven did not establish beyond a reasonable doubt that he caused Robin's injuries.

It is well established that if the circumstances reasonably justify the finding by the trier of fact, a judgment will not be reversed on the

basis that the circumstances might also be reasonably reconciled with a contrary finding. (*People* v. *Reilly* (1970) 3 Cal.3d 421, 425 [90 Cal.Rptr. 417, 475 P.2d 649].) ■ The determination of credibility of witnesses and resolution of conflicts in the evidence are the province of the trier of fact and the conclusions drawn therefrom will not be disturbed on appeal where these are supported by substantial evidence. ■ The lack of eyewitnesses or direct evidence of the manner in which Robin's injuries were inflicted does not sustain a claim of insufficient evidence where ample circumstantial evidence exists to connect the defendant with the crime. (*People* v. *Mosher* (1969) 1 Cal.3d 379, 395 [82 Cal.Rptr. 379, 461 P.2d 659].)

The evidence shows that defendant Demond was at home alone with Robin and Lisa regularly each day. Dr. Mall testified that it would not be possible for Robin's abdominal injury to occur accidentally unless she had fallen at least 20 feet and struck some object; the steps to the apartment were only a few feet high. It was defendant Demond who brought Robin to the Passens' apartment after her injury with an implausible explanation for her condition. The evidence introduced at trial disclosed that defendant Demond was the only person who had the opportunity to inflict injuries on Robin that day. Moreover, the evidence failed to establish to the satisfaction of the trier of fact that her injuries might reasonably have been caused by accident, such as a fall. Under the circumstances and based upon the evidence, it was reasonable for the jury to draw the inference that defendant Demond killed Robin.

## II

■ Defendant Demond's second contention is that the trial court improperly instructed the jury on murder by torture since the evidence was not sufficient to justify such an instruction. The trial court is required to charge the jury "on any points of law pertinent to the issue, if requested by either party." (*People* v. *Aeschlimann* (1973) 28 Cal.App.3d 460, 469 [104 Cal.Rptr. 689].) The cases describe the requirements for murder by torture, which constitutes murder of the first degree. (Pen. Code, § 189.) "Murder by torture is characterized by the intent of the defendant to inflict grievous pain and suffering upon his victim either for purpose of revenge, extortion, persuasion or to satisfy some sadistic impulse. [Citations.]" (*People* v. *Pickens* (1969) 269 Cal.App.2d 844, 851 [75 Cal.Rptr. 352].) ■ Although some evidence of the intent to inflict pain and suffering is necessary, that intent may be inferred from the circumstances surrounding the killing as well as the condition of the

victim's body. (*People* v. *Beyea* (1974) 38 Cal.App.3d 176, 200-201 [113 Cal.Rptr. 254]; *People* v. *Washington* (1969) 71 Cal.2d 1061, 1083 [80 Cal.Rptr. 567, 458 P.2d 479].) The accused need not intend that his victim should die as a result of the torture in order to sustain his conviction of murder by torture. (*People* v. *Mattison* (1971) 4 Cal.3d 177, 183 [93 Cal.Rptr. 185, 481 P.2d 193].)

■ In the present case there was ample evidence that defendant Demond had the requisite intent and desire to inflict cruel pain and suffering on the victim, Robin Weisbach. Dr. Wiley testified that from the nature and extent of the injuries it was clear that they could not be attributed either to a seizure or to the activities of an accident-prone child. Examination of the victim revealed that Robin's various injuries (including abdominal injuries, head injuries, arm fracture, lip laceration and multiple bruises over most of her body) had been inflicted at differing times over a period of weeks. It was established that Robin had exhibited no marks of injury prior to the time that defendant Demond moved into the apartment with the family in September 1974. It appears that thereafter the injuries inflicted upon Robin increased in intensity until the time of her death on November 6.

Defendant Demond did not testify in his own defense to explain Robin's condition, hence circumstantial evidence must be relied upon on the issue of intent. This evidence alone amply sustains the inference that Robin's injuries were inflicted with calm deliberation and intent to cause pain by a person in control of his reason and emotions. The bruises and other injuries multiplied on Robin's small body during the month of October and into November. Manifestly, such injuries could not be sustained by a young and vulnerable child without causing her severe pain and suffering. As the trial court observed in ruling on defendant Demond's motion for new trial on this same ground, ". . . to say that there was no evidence that that child suffered is outside the realm of human experience." The jury was entitled to infer from the evidence that Robin suffered by being whipped by a belt and from whatever other methods the defendant invoked for inflicting upon her bruises, internal injuries and other trauma.

■ Defendant Demond's claim that the instruction on murder by torture constituted an erroneous statement of law cannot be sustained. The court instructed, in pertinent part, "The crime of murder by torture does not necessarily require any proof that the defendant intended to kill

the deceased, nor does it necessarily require any proof that the deceased suffered pain." This is a correct statement of the law when accompanied, as it was in the present case, by instructions amplifying the requirement of premeditation and deliberation.

As the California Supreme Court has recently observed, "In labeling torture as a 'kind' of premeditated killing, the Legislature requires the same proof of deliberation and premeditation for first degree torture murder that it does for other types of first degree murder." (*People* v. *Steger* (1976) 16 Cal.3d 539, 546 [128 Cal.Rptr. 161, 546 P.2d 665].) In each case the question which must first be asked is whether there was "torture" within the meaning of the statute. It is beyond dispute that the series of traumatic injuries inflicted upon Robin constituted torture. However, it is not the amount of pain inflicted which distinguishes a torture murder since most killings involve significant pain; "it is the state of mind of the torturer—the *cold-blooded intent to inflict pain for personal gain or satisfaction*—which society condemns." (Italics added.) (*People* v. *Steger, supra,* 16 Cal.3d at p. 546.)

The proof relating to Robin's injuries and the manner in which they were necessarily inflicted continuously over a period of weeks and months was not directly refuted in any way. Defendant Demond, who was Robin's daily caretaker, was in deliberate and rational control of his behavior at all times. There is no showing of any circumstance, such as use of drugs or alcohol, which would diminish his capacity to premeditate and deliberate. (*People* v. *Anderson* (1965) 63 Cal.2d 351 [46 Cal.Rptr. 763, 406 P.2d 43]; *People* v. *Tubby* (1949) 34 Cal.2d 72 [207 P.2d 51].) There was no showing that his intellectual capacity was impaired or that he was subject to misconduct because he was carried away by the heat of passion. (*People* v. *Steger, supra,* 16 Cal.3d 539.)

There is no evidence to suggest that Robin's conduct at any time justified or provoked defendant Demond's attack upon her. The evidence that defendant Demond placed Robin's wet pants over her head and that he forced her to eat her own feces strongly suggests that his conduct was prompted by sadistic impulses toward the helpless three-year-old victim.

In short, the evidence supports a finding of deliberate and premeditated acts of torture with no mitigating circumstances. Therefore, the instruction on torture murder was appropriate.

## III

■ Defendant Demond next contends that the ruling of the trial court admitting the photographs of Robin Weisbach's body into evidence constituted prejudicial error. At the conclusion of the prosecution's case, the People moved to have these photographs introduced into evidence and defendant Demond objected on the ground that no sufficient foundation had been laid and the photographs were inflammatory and gruesome. The trial court in ruling on the admissibility of the photographs observed that a sufficient foundation had been laid because they fairly depicted that which they purported to portray. (*People* v. *Bowley* (1969) 59 Cal.2d 855 [31 Cal.Rptr. 471, 382 P.2d 591, 96 A.L.R.2d 1178].) Both Dr. Wiley and Dr. Mall affirmed that the photographs constituted a true and accurate portrayal of the way Robin's body appeared at the time of the physical examination; Dr. Mall was present when many of the photographs were taken.

Although defendant claims the photographs had the prejudicial effect of inflaming the jury, it is the exclusive province of the trial court to determine whether the probative value outweighs the possible prejudicial effect of evidence. (*People* v. *Stanworth* (1969) 71 Cal.2d 820, 839 [80 Cal.Rptr. 49, 457 P.2d 889].) The photographs were relevant on the issue of the manner in which Robin met her death and there is no showing that the trial court's ruling constituted an abuse of discretion. (*People* v. *Murphy* (1974) 8 Cal.3d 349, 363 [105 Cal.Rptr. 138, 503 P.2d 594]; *People* v. *Parks* (1973) 32 Cal.App.3d 143, 155 [108 Cal.Rptr. 34].) In view of the medical testimony describing Robin's injuries, it was reasonable to introduce the photographs in evidence so that the jury could determine independently whether this objective evidence corroborated or refuted medical testimony. (*People* v. *Cheary* (1957) 48 Cal.2d 301, 312 [309 P.2d 431].)

In fact, attorneys tend to underestimate the stability of the jury. "Jurors are our peers, often as well educated, as well balanced, as stable, as experienced in the realities of life as the holders of law degrees. The average juror is well able to stomach the unpleasantness of exposure to the facts of a murder without being unduly influenced. The supposed influence on jurors of allegedly gruesome or inflammatory pictures exists more in the imagination of judges and lawyers than in reality." (*People* v. *Long* (1974) 38 Cal.App.3d 680, 689 [113 Cal.Rptr. 530].)

## IV

■ Defendant contends that the trial court's ruling admitting the testimony of Mrs. Simmons and Dr. Mall in rebuttal for the prosecution was improper. ■ Once again, the order of proof in criminal trials rests largely within the sound discretion of the court and the trial court's exercise of that discretion will not be disturbed on appeal in the absence of palpable abuse. (*People* v. *Cuevas* (1971) 16 Cal.App.3d 245, 250 [93 Cal.Rptr. 916].) The issue in the present case is whether the rebuttal evidence was properly introduced to meet specific points of dispute raised by the defense. ■ "While it is improper for the prosecutor to withhold evidence which is properly a part of his case in chief and offer it after the defense has closed its case, such evidence may be used by the prosecutor where it comes within the rules of impeachment and may be admitted on rebuttal to meet evidence upon a point put into dispute by the testimony for the defense. [Citations.]" (*People* v. *Harrison* (1969) 59 Cal.2d 622, 629 [30 Cal.Rptr. 841, 381 P.2d 665].)

■ The testimony of defense witness Mrs. Crisp was that she had given physical performance tests to Robin during October and found that the child was of average intelligence. At that time she had not noted any marks that would suggest that Robin was a battered child. Mrs. Simmons testified in rebuttal that two or three weeks prior to Robin's death she had observed bruises on the infant's back and buttocks which were unusually large and which she had rarely observed on children in the past. She also testified that Robin had bruises on her forehead. This testimony was introduced to negate Mrs. Crisp's testimony that she failed to observe any marks or injuries on Robin.

The additional testimony introduced by defense witnesses had the purpose of impeaching medical testimony regarding the extent and severity of injuries observed in examination of Robin's body and to imply that those injuries were not present over the weeks immediately preceding Robin's death. The rebuttal testimony of Dr. Mall was introduced to explain that the character of Robin's bruises refuted any inference that those discolorations could have occurred after her death.

Defense counsel was not without resources with respect to this rebuttal evidence; he had every opportunity to introduce additional evidence to contradict this testimony and to cross-examine these witnesses, but he did neither. In view of the careful consideration the trial court gave to

the issues upon an offer of proof made by the prosecution prior to introduction of the testimony, it cannot be said that an abuse of discretion occurred.

## V

■ Defendant Demond contends that the trial court improperly sustained an objection to certain testimony which the defense was attempting to elicit from Dr. Robinson. The doctor was asked whether he could describe the efforts taken when an unconscious person whose heart had stopped was brought in for emergency treatment. The trial court asked whether the doctor had ever rendered personal emergency care to the victim, and the witness responded that he had not. As a consequence, the trial court sustained the objection to his testimony. The defendant now contends that the defense wished to show the possibility that the abdominal injury to Robin Weisbach might have been sustained after death as the result of the application of external heart manipulation. Neither this argument nor an offer of proof was presented to the trial court. Defendant is foreclosed from challenging on appeal the trial court's ruling on the objection since he failed to make an offer of proof regarding the materiality of the excluded evidence. (*People* v. *Thomas* (1970) 3 Cal.App.3d 859, 864 [83 Cal.Rptr. 879].) The trial court ruled correctly because Dr. Robinson disclosed his lack of personal knowledge as to Robin's condition and emergency care, and there was no evidence to suggest that he was familiar with the facts surrounding her death. (Evid. Code, § 702, subd. (a).)

## VI

■ Defendant Demond contends further that the display of Lisa Weisbach's back injury to the jury was improper and that his objection thereto was improperly overruled. (Evid. Code, § 352.) Such a contention can be asserted on appeal only when the specific ground for the exclusion of the evidence was clearly stated to the trial court. (*People* v. *Dorsey* (1974) 43 Cal.App.3d 953, 960-961 [118 Cal.Rptr. 362].) ■ Evidence is admissible in a criminal case if it tends logically, naturally, and by reasonable inference to establish any fact material for the People or overcomes any material matters sought to be proved by the defense. (*People* v. *Poland* (1963) 219 Cal.App.2d 422, 427 [33 Cal.Rptr. 211]; Evid. Code, § 210.) The preference is to admit any evidence which may illuminate the transaction or give any weight in determining the issue; the strength or weight of the evidence is

determined by the jury. (*People* v. *Wilder* (1955) 135 Cal.App.2d 742, 747 [287 P.2d 854].) The display of Lisa's back tended to corroborate Lisa's testimony that she was beaten. It also illuminated the testimony of Mrs. Kenney who became a foster parent to Lisa Weisbach on November 26, 1974. She testified that when Lisa first came to her home, she observed marks of serious injury on Lisa's back. From the testimony of these two witnesses it could be inferred that defendant Demond in fact inflicted the injuries to Robin with the intent to cause pain and suffering.

## VII

Defendant Demond contends that Lisa Weisbach's testimony was improperly admitted by the trial court because he had no opportunity to interview her prior to trial or during court recess, and the trial judge failed to instruct *sua sponte* limiting the use of Lisa's testimony, which contained evidence of prior misconduct by defendant Demond.

■ Defendant claims the prosecution's failure to afford him an opportunity to interview Lisa violated portions of the discovery motion which was granted by the trial court. However, his failure to object to the introduction of her testimony on the ground that it was being admitted in violation of the discovery order precludes consideration of the issue on appeal. (*People* v. *Fonville* (1973) 35 Cal.App.3d 693, 707-708 [111 Cal.Rptr. 53].) There is no showing that defendant was surprised when Lisa Weisbach was called as a witness. He objected to her testimony at the time on the ground of competency only, which the court determined on voir dire. Although he objected that he had no prior interview with her, when it was overruled he did not request a continuance before her testimony or prior to his thorough cross-examination. There is no showing in the record before this court that any tapes, documents or statements made with respect to the testimony of this witness were entered into evidence or used by the prosecution without first being disclosed to defense counsel. The prosecution did not withhold from defendant the opportunity to interview Lisa; the prosecutor explained to Mrs. Kenney that she had the right to grant or deny defendant's request for an interview with Lisa prior to trial. It is not surprising that she chose to deny the interview in view of Lisa's age and the surrounding circumstances.

Defendant Demond's contention that the trial judge should have given a *sua sponte* instruction limiting the purpose of Lisa's testimony is not

supported by the record. Defendant Demond did not request that the trial court admonish the jury that Lisa's testimony was admitted for a limited purpose; nor did he request a limiting instruction to the jury at the close of the evidence. There is no basis for imposing a *sua sponte* duty on the trial court, especially in the case where evidence of prior misconduct tends to prove the defendant's guilt of charges which resulted from these or similar acts. (*People* v. *Jackson* (1975) 45 Cal.App.3d 67, 70 [119 Cal.Rptr. 71].)

Defendant, by failing to object to Lisa's statement that he struck Robin with his hand on the absence of Lisa's personal knowledge, has waived this ground on appeal. (*People* v. *Dorsey, supra,* 43 Cal.App.3d 953, 960-962.)

## VIII

Defendant Demond claims that his motion for a judgment of acquittal (Pen. Code, § 1118.1), based on grounds that the prosecution failed to prove malice, was improperly denied by the trial court. The statute provides that where there is no evidence which could sustain on appeal a conviction of the defendant for the crime charged, the trial court is under legal compulsion to grant a motion for acquittal. However, "malice" may be inferred from the circumstances of the homicide. (*People* v. *Lines* (1975) 13 Cal.3d 500, 505-506 [119 Cal.Rptr. 225, 531 P.2d 793].) The evidence presented at trial was sufficient to sustain defendant Demond's conviction, and substantial evidence of malice was introduced during the prosecution's case in chief prior to defendant's motion. The medical testimony regarding the number, extent, severity and various ages of the injuries to Robin, combined with evidence that defendant had engaged in conduct which inflicted pain and suffering on Robin, supported a finding that malice was present. The trial court properly denied defendant's motion for acquittal.

## IX

Defendant Demond contends that his motion for a new trial on the grounds of (a) newly discovered evidence and (b) prosecutorial misconduct during closing argument was improperly denied. The newly found evidence to which he refers is the proposed testimony of Terri Monte that some four months before defendant moved in with the Weisbachs Terri observed evidence of trauma on Robin's body. "A

defendant on a motion for a new trial based on newly discovered evidence must show inter alia that the evidence is in fact newly discovered; that it is not merely cumulative to other evidence bearing on the factual issue; that it must be such as to render a different result probable on a retrial; and that the moving party could not, with reasonable diligence, have discovered and produced the evidence at trial. [Citation.]" (*People* v. *McDaniel* (1976) 16 Cal.3d 156, 178 [127 Cal.Rptr. 467, 545 P.2d 843].) Defendant Demond makes no showing that this witness was newly discovered or that this evidence could not with the exercise of reasonable diligence have been produced at trial. Moreover, defendant did not demonstrate to the satisfaction of the trial court that a different result would be probable upon a retrial with the additional evidence. To add cumulative testimony regarding incidents of accidental injury would serve no purpose in light of the jury's verdict that the defendant deliberately inflicted pain and suffering on Robin.

█ Defendant argues, however, that the prosecutor committed prejudicial misconduct when he told the jury in closing argument that since the defense produced no witnesses to show that someone else had caused Robin's death, it must have been the defendant. (*Griffin* v. *California* (1965) 380 U.S. 609 [14 L.Ed.2d 106, 85 S.Ct. 1229].) Defendant Demond has not provided ·the record including closing argument of counsel, and we are limited to matters contained therein. (*People* v. *Slocum* (1975) 52 Cal.App.3d 867, 879 [125 Cal.Rptr. 442].) Since, by his own admission, defendant did not object to the statements nor did he request any admonition to the jury to cure the alleged impropriety at the time, he is foreclosed from raising the issue here. (*People* v. *Ayers* (1975) 51 Cal.App.3d 370, 379-380 [124 Cal.Rptr. 283].) The *Griffin* case prohibits reference to a defendant's failure to take the witness stand; it in no way excludes comments on the state of the evidence or the failure of the defense to introduce material evidence or call other witnesses. (*People* v. *Vargas* (1973) 9 Cal.3d 470, 475 [108 Cal.Rptr. 15, 509 P.2d 959].) The remarks attributed to the prosecution were permissible since it merely comments upon the failure of the defense to introduce evidence material and relevant to explain the cause of Robin's death.

The judgment is affirmed.

Lillie, Acting P. J., concurred.

**THOMPSON, J.**—I concur by reason of the focus of the Supreme Court in its opinion in *People* v. *Steger,* 16 Cal.3d 539. There the high court emphasizes the requirement of a wilful premeditated intent to inflict extreme and prolonged pain as an element of murder by torture (16 Cal.3d at p. 546). However, rather than requiring a jury instruction to that effect, the Court undertook an independent evaluation of permissible inferences from the circumstantial evidence to determine that the element was not satisfied. The approach followed by *Steger* thus requires that each case of appellate review of conviction of murder raised to first degree by the employment of torture be considered on its own evidentiary facts.

The facts of the case at bench are different from those in *Steger* albeit only slightly. Since the Supreme Court has placed us in the business of finding fact inferable from circumstantial evidence, my personal finding is that the element of defendant's wilful, premeditated intent to inflict extreme and prolonged pain should be inferred.

Appellant's petition for a hearing by the Supreme Court was denied August 26, 1976.