[Civ. No. 1954.   Fourth Appellate District.—August 17, 1936.]

B. C. WILBURN, Respondent, v. U. S. GYPSUM COMPANY (a Corporation) et al., Appellants.

Hickcox & Trude, Charles B. Provence and Floyd T. Scheidell for Appellants.

Ray D. Johnson and J. Fred Hoover for Respondent.

BARNARD, P. J.—The plaintiff was injured on May 15, 1931, by an automobile owned by the corporate defendant and driven by the individual defendant. On the first trial a jury awarded him $25,926 and a new trial was granted. A second trial resulted in a verdict for $13,187 and a new trial was granted because the plaintiff refused to reduce the amount to $8,000. On the third trial the defendants admitted liability and the only issue submitted was as to the amount of damages. The defendants stipulated to doctor's bills in the sum of $175 and to $550 as the amount of damage to the plaintiff's automobile. A jury brought in a verdict for these two items plus an allowance of $13,550 for personal injuries, a total of $14,275. A motion for a new trial was denied and the defendants have taken this appeal.

The appellants argue that the court erred in permitting certain X-ray pictures to be introduced in evidence, for the reason that they were taken nearly four years after the accident. This objection is without merit.

The main point urged by the appellants is that the amount allowed for personal injuries is excessive, it being contended that the same is so grossly disproportionate to any amount warranted by the evidence as to shock the sense of justice and to raise the presumption that the verdict was based on prejudice and passion rather than on sober judgment.

The plaintiff testified that he had been able to do "very little" work after the accident. When asked if he had done some work he replied: "I sewed sacks in a seed house at Wellton, Arizona." When asked if he had ever done any hard work since the accident he replied: "Not what I would call hard work. Compared with what I was able to do be-

fore it was merely exercise." However, the man who ran the seed house testified, without contradiction, that from July, 1933, to May, 1934, the respondent worked for him whenever he had work to be done; that he worked a few days in July, 27 days in August, 17 days in September, 19 in October, 4 in November, 4 in February, 12 in March, and 18 in May; that his work consisted of emptying sacks of uncleaned alfalfa seed, filling the sacks with the cleaned seed, and moving and stacking up the filled sacks; and that these sacks weighed 160 pounds before the seed was cleaned and 175 pounds thereafter. While the respondent may not call this hard work it at least indicates that he was not entirely incapacitated. The respondent was 51 years old at the time of the accident and according to the only evidence of his earning capacity shown by the record the jury allowed him his full earnings for about twenty years.

The doctor who treated the respondent testified that when he first examined him he complained of a stiff neck, pain in his back and pain in his right shoulder and arm. At the first two trials he testified that he thought there was a dislocation of three ribs. All pictures taken up to that time showed no fracture. On the third trial he showed an X-ray picture which he said indicated that there had been a fracture of one of the vertebrae. Other doctors were unable to see this fracture in the picture. This doctor also testified that the respondent's right shoulder was an inch lower than the left; that the injuries to the vertebra, the dislocation of the ribs and the injuries to the shoulder had caused some injury to the nerves; that this condition would cause stiffness of the neck; that the dislocation of the ribs had caused curvature of the spine; that this would cause constant pain for a long time and "he may be suffering now"; that he walked with his head held in a "constricted position"; that the injury to his back would make him more nervous and more irritable; and that the injuries shown by the X-rays would affect his general nervous system to the extent of 25 per cent and would interfere with his labors to the extent of 75 per cent.

Another witness testified that the respondent had always held his head in a peculiar position and that he could see no difference after the accident. While the doctor testified that the conditions "disclosed by the X-rays" would show that

his ability to labor had been interfered with to the extent of 75 per cent, all of this cannot be attributed to the accident. This doctor testified that when he first examined him, shortly after the accident, the respondent had infected tonsils, that this was evidently of long standing, and that he was then afflicted with osteo-arthritis. While he testified that arthritis might be caused by trauma his testimony indicates it is much more likely to come from infected tonsils. This is especially significant here since his examination was made so soon after the accident. Other doctors testified that arthritis in the respondent could not be caused by trauma since it was so widespread. The X-ray pictures showed it in many parts of the body not affected by the accident.

The respondent's physician also produced X-ray pictures showing the respondent's heart, which were shown to the jury. He testified that when the respondent first came to him for examination his heart was very greatly enlarged, and that this condition still prevailed; that a naturally diseased condition would make such an enlarged heart; that no one was capable of saying whether it came from an automobile collision; and that he had never known of such a case. However, he went on at great length to show how much this heart was enlarged; that this endangered the patient's life; that he might drop off at any moment; that any severe excitement might cause him to die because of this enlarged heart; that undue excitement would cause him to suffer greatly; and that such a heart would cause a shortness of breath, a feeling of dead weight, and would affect his ability to sleep at night. The respondent had complained of all of these symptoms. The doctor admitted on cross-examination that he had never claimed that this heart condition was the result of this accident. Other doctors testified that this could not have been caused by an accident.

The only conclusion which can reasonably be drawn from all of the evidence is that a large part of any disability from which the respondent was suffering at the time of the trial was due to arthritis and to this condition of his heart, neither of which was caused by the accident. A large part of this evidence should never have been received and the amount of the verdict, in view of the evidence, raises a strong presumption that the jury was acting under passion or prejudice or misapprehension of some sort. The record would

indicate that the jury accepted the testimony that the respondent was disabled to the extent of 75 per cent, and that they failed to distinguish between that part of his condition which was the result of this accident and that part which arose from other causes.

In any event, the amount of the verdict suggests "at first blush passion, prejudice, or corruption on the part of the jury"; and we think the same should be reduced to a reasonable amount. Of necessity there must be considerable leeway in fixing the amount of damages in such a case. On the second trial the judge attempted to reduce the amount to $8,000. That amount was certainly sufficient and, in view of all of the circumstances, we think the amount thus suggested furnishes the best criterion of the amount that should be allowed to stand and that, since the case has already been tried three times, we should here follow the procedure used in *Livesey* v. *Stock*, 208 Cal. 315 [281 Pac. 70], *Slaughter* v. *Van Winkle*, 213 Cal. 573 [2 Pac. (2d) 789], and *Epply* v. *Los Angeles Creamery Co.*, 216 Cal. 194 [13 Pac. (2d) 664].

It is ordered that the judgment be reversed and the cause remanded for a new trial as to the amount of damages unless, within thirty days from the filing of the *remittitur* in the trial court, the respondent shall remit from the judgment all except the sum of $8,000 and the costs already taxed therein. If such remission is so made, the judgment shall stand affirmed and the respondent will recover his costs on appeal.

Jennings, J., and Marks, J., concurred.