[Crim. No. 6153. Second Dist., Div. Three. Nov. 26, 1958.]

THE PEOPLE, Respondent, v. STANLEY WYNKOOP, Appellant.

Russell E. Parsons, under appointment by the District Court of Appeal, for Appellant.

Edmund G. Brown, Attorney General, William E. James and Arthur C. deGoede, Deputy Attorneys General, for Respondent.

SHINN, P. J.—By indictment, Stanley Wynkoop and James Alvord were jointly accused in Count I of committing an offense of burglary on August 25, 1956; in Counts II and III Wynkoop was accused of committing two offenses of burglary on November 10, 1956. Trial was to the court. On motion of the district attorney the indictment was dismissed as to Alvord and the latter testified on behalf of the People. The court found Wynkoop guilty on three counts of burglary and determined the offenses to be burglary of the second degree. Wynkoop appeals from the judgment and the denial of his motion for new trial.

The evidence consisted of the transcript of the proceedings before the grand jury and additional evidence introduced at the trial. The Firestone Store located at the corner of 8th Street and La Brea in Los Angeles was burglarized on the night of August 25, 1956; a cash drawer containing $3.00 or $4.00 in change and six new whitewall tubeless tires of a value of $200 were later found to be missing. The Metropolitan Theater Corporation maintains an office on the second floor of a three-story building on South Robertson Boulevard in Los Angeles. On Sunday morning, November 11, 1956, a company employe discovered that the office had been broken into and ransacked; a safe containing about $2,911 in cash had been cracked and damaged and the money was missing. The office of the Pacific Drive-In Theaters Corporation is located on the second floor of a two-story building on the opposite side of Robertson Boulevard, about 150 feet south of the Metropolitan office. A similar scene was discovered there on the morning of November 11th; desk drawers had been pried open and two safes had been cracked and damaged. One of the safes had contained $500 in cash; the other contained about $10,000 in $20, $50 and $100 bills; the money was missing. It was established that the safes in both offices had been opened by punching out the spindle (a length of metal centering the combination and dials), from the front of the safe instead of from the back. Police officers called to the scene discovered footprint impressions made by crepe-soled

shoes near the safe in the Metropolitan office, on the stairway leading thereto, and at the rear of the building housing the office of Pacific Drive-In Theaters. The officers took photographs of the footprint impressions.

James Alvord testified that he drove Wynkoop to the Firestone Store on the night of August 25th. After casing the store they went to a warehouse on Slauson Avenue and picked up some tools. Upon returning to the store, Wynkoop forced open a rear window with a screwdriver and went inside; he returned with a metal cash drawer containing a few dollars in change and told Alvord that the safe was empty. Both men then entered the store. Alvord looked for tires and took six new whitewall tubeless tires that were still in their original wrappings; four of the tires were 670-15s, the others were larger. Alvord gave two of the 670-15s to Wynkoop and kept the others; he later sold the two large tires and kept the remaining 670-15s. Alvord also testified that he visited Wynkoop's house on November 11th. He arrived just as Wynkoop's wife and sister-in-law were leaving. Alvord observed a stack of $20, $50 and $100 bills on a coffee table. Wynkoop fanned out the bills and said: "There is about $6,000 here." He told Alvord that he had "hit some shows" on Robertson Boulevard that weekend and had obtained about $9,000. He said that he had opened three safes to get the money and had cracked them by punching around the tumbler pins until he could loosen them and pull them out the front.

Wynkoop was arrested on November 28th. The arresting officers searched his car and recovered a screwdriver which Wynkoop admitted was his. Officer Joncich, a qualified police chemist, testified that he made a microscopic comparison of marks found on the screwdriver and on a damaged drawer belonging to one of the desks at the Pacific Drive-In office. He stated his opinion that there was a "high likelihood" the marks on the desk drawer were made by the screwdriver found in Wynkoop's car. The screwdriver and several photographs showing the marks on the screwdriver and on the desk drawer were received in evidence. The screwdriver which is before us as an exhibit shows many definite file marks where the end was sharpened on both sides. The photograph of the desk also shows clear and distinct file marks of the tool that was used in opening the desk. The exhibits furnished a sound basis for an accurate comparison of the file marks on the screwdriver with the marks on the desk.

The arresting officers also found two 670-15 tubeless white-wall Firestone tires on the front wheels of Wynkoop's car. The tires appeared to be quite new, having undergone approximately two months' normal driving wear; the serial number had been removed from one of the tires and the other serial number was partially effaced. Sergeant Donovan, who was one of the investigating officers on the case, testified as to a conversation he had with Wynkoop concerning the tires. He told Wynkoop that Alvord had informed him the tires were stolen from the Firestone Store and Wynkoop replied: "Well, these tires are awful valuable to me. They are worth $1,000."

December 3, 1956, Donovan and another officer went to appellant's home with a search warrant. Donovan asked Wynkoop whether he still had his crepe-soled shoes. Wynkoop replied: "Do you mean my sneakers?" Appellant went to his bedroom and obtained the shoes. He then asked Donovan: "Isn't there something that can be done?" Shortly thereafter, Wynkoop and the officers went outside. Donovan showed appellant some photographs of the footprints found at the Metropolitan and Pacific Drive-In Offices. Wynkoop said: "Jesus, anybody will make those. Can't you lose them?" Appellant then asked if he could talk to Donovan alone; the officer refused.

Officer McCauley, a qualified police technician, testified that he made a comparison of Wynkoop's shoes with three photographs of the impressions left by the footprints left at the scene of the theater company burglaries. In his opinion, the shoes were of the same size, type of tread and wear pattern as the impression found near the Pacific Drive-In office. The witness could not state positively that Wynkoop's shoes made the impression because the photograph was not sufficiently detailed; however, he stated his opinion that the similarity in size, tread and wear pattern was very unusual. McCauley also testified that the impression found near the Metropolitan safe exhibited a pattern similar to the bottom of the Wynkoop's shoes. The shoes and photographs were likewise received in evidence. The photographs and the "sneakers" are before us as exhibits. The soles of the shoes have heavy horizontal ribs and show a definite wear pattern. Two of the enlarged photographs are clear and distinct as to size and pattern. There was a sound basis for comparison of the photographs with the shoes.

Officer Donovan had another conversation with Wynkoop on December 7th, while appellant was out on bail. The officer

told Wynkoop that things "looked bad" and that Alvord had related his visit to appellant's home the day after the theater company burglaries. Wynkoop said: "Well, it looks like I am going to the joint—is there anything we can do?"

Wynkoop, testifying in his own behalf, denied his guilt of the burglaries. He gave two accounts of his possession of the Firestone tires; he first testified that he bought them from a friend of Alvord and then testified that he bought them from Alvord; Alvord gave him the screwdriver that the officers found in his car. Wynkoop denied making the statements attributed to him by the officers; when questioned by Donovan about the burglaries he denied his guilt. He spent the 10th and 11th of November, 1956, at Day's Guest Ranch in Las Vegas.

Kenneth Day, proprietor of the guest ranch, testified that Wynkoop registered at the ranch on Saturday afternoon, November 10, 1956. He saw Wynkoop having a drink at the bar and did not see him again until the following afternoon. Wynkoop checked out of the ranch on Monday, November 12th. The witness identified a registration card as one he had filled out for Wynkoop; the card listed the month and day of the transaction. On cross-examination, Day testified that appellant could not have been at the guest ranch in November 1955 because it was not in operation at that time.

The first assignment of error to be considered is Wynkoop's contention that the evidence tending to implicate him was legally insufficient as corroboration of the testimony of his accomplice Alvord regarding the Firestone Store burglary. (Pen. Code, § 1111.)

█ Corroborating evidence is sufficient if it tends to connect the accused with the commission of the crime in such a way as may reasonably satisfy the trier of fact that the witness who must be corroborated is telling the truth; it must be considered without the aid of the testimony which is to be corroborated, and is insufficient if it requires the interpretation and direction of such testimony in order to give it value. (*People* v. *MacEwing*, 155 Cal.App.2d 117, 123 [317 P.2d 82].) █ Corroborating evidence need not be direct but may be circumstantial. It need not extend to all the elements of the offense, nor to every detail included in the testimony of the corroboratee, and it has been held that it is sufficient if it tends, in some slight degree, to implicate the accused. (*People* v. *Griffin*, 98 Cal.App.2d 1, 25-26 [219

P.2d 519], and cases cited.) ■ The weight of the corroborating evidence is a factual question for the trier of fact to determine. (*People* v. *Trujillo*, 32 Cal.2d 105, 112 [194 P.2d 681].) ■ We are of the opinion that the testimony of Alvord was sufficiently corroborated by independent evidence that tended reasonably to establish both Wynkoop's connection with the Firestone burglary and the truth of Alvord's testimony. Appellant had in his possession several months after the burglary two new front tires of the same size and make as those taken from the store. As mentioned earlier, the tires appeared to have undergone about two months' normal wear and their serial numbers have been wholly or partly removed. The possession of stolen property tends logically to implicate the accused in the theft of the property and it has been held that evidence of such possession is sufficient to corroborate the testimony of an accomplice. (*People* v. *Bettencourt*, 64 Cal.App. 243, 248-249 [221 P. 403] ; *People* v. *Haughey*, 79 Cal.App. 541, 543 [250 P. 406].) Two other incriminating circumstances were: First, when questioned by Officer Donovan, Wynkoop said that the tires were worth $1,000 to him, a statement the court could reasonably have interpreted as an offer to bribe the witness; and second, Wynkoop gave conflicting explanations of his possession of the tires in his testimony. Each of these circumstances tended to indicate appellant's consciousness of his guilt and furnished additional corroboration of the accomplice testimony.

As we say, the testimony of Alvord was sufficiently corroborated. His testimony, together with the other evidence presented by the People, amply established Wynkoop's guilt of the Firestone burglary.

■ The next point raised by appellant is the insufficiency of the evidence to establish his guilt of the two theater company burglaries, both of which were committed on the night of November 10th. The argument is without merit.

Alvord testified that he saw a stack of money in Wynkoop's possession on the day following the burglaries and that appellant told him he had "hit some shows" on Robertson Boulevard. Since Alvord did not participate in these offenses, he was not Wynkoop's accomplice and there was no requirement that his testimony relating thereto be corroborated. Furthermore, the court could infer from the testimony of the police technicians that the footprints found at the scene of the burglaries were probably made by appellant's shoes and that a desk drawer in one of the offices had been forced

' open with appellant's screwdriver. The weight to be accorded to the opinions of the experts was a question of fact for the court. (*People* v. *Tucker,* 88 Cal.App.2d 333, 340 [198 P.2d 941].) The court could also draw an inference adverse to appellant from the circumstance that, when confronted by the photographs of the footprint impressions, Wynkoop asked: "Can't you lose them?" (*People* v. *Davenport,* 13 Cal.App. 632, 639 [110 P. 318].) The court was not required as a matter of law to give credence to the defense testimony that Wynkoop was in Las Vegas at the time the burglaries were committed. (*People* v. *Spillard,* 15 Cal. App.2d 649, 652 [59 P.2d 887] ; *People* v. *Ash,* 88 Cal.App.2d 819, 826 [199 P.2d 711].) We think that the convictions find ample support in the evidence.

 Appellant's final contention is that the deputy district attorney was guilty of prejudicial misconduct.

Officer Donovan, called as a rebuttal witness, was asked whether he had received any telephone calls from Wynkoop since the case had been pending. The officer replied that appellant had telephoned him before the return of the indictment and that he had met Wynkoop at the latter's request. Upon being asked by the deputy whether he had any subsequent conversations with appellant, Donovan testified that Wynkoop telephoned him about two months prior to the trial. When asked what was said at that time, Donovan replied: "The defendant said he wanted to see me. I told him I wanted to see him, and I said, 'I have heard that you have been looking for Jimmy Alvord, and I want you to know that if anything happens to him, you are going to be picked up' and hung up."

Counsel for appellant promptly moved to strike Donovan's answer upon the grounds that it was hearsay, immaterial, and improper rebuttal testimony. Counsel stated: "I think that it is a highly prejudicial statement and I ask the Court for a mistrial and I move to strike it. There has been no evidence of it whatsoever." The deputy then stated: "There is now, Counsel."

After a lengthy argument, the court granted appellant's motion to strike the testimony and denied his motion for a mistrial.

Wynkoop earnestly contends that the stricken testimony was elicited by the deputy in a deliberate attempt to prejudice him and that the prosecutor's misconduct had the effect

of depriving him of a fair trial. The argument cannot be maintained. We agree with appellant that the testimony was inadmissible and should not have been offered. It scarcely can be doubted that the prosecutor anticipated the testimony Donovan was about to give. Our question is, however, whether the occurrence so prejudiced appellant as to deprive him of a fair trial. We think it did not. The testimony was objected to and stricken from the record. In ruling on appellant's motions, the court stated: "The testimony on direct will be stricken. The Court will ignore it entirely. . . . It has made no impression on me. I ignored it. As far as this case is concerned, it doesn't affect my judgment one way or another. This matter is stricken as far as I am concerned." We believe that the court's emphatic statement of its intention to disregard the incident was sufficient to dispel any prejudice to appellant that might have resulted from the officer's testimony.

The judgment and the order denying motion for a new trial are affirmed.

Wood (Parker), J., and Vallée, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied January 21, 1959.