[Crim. No. 7303.   In Bank.   June 18, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. WALTER
BOWLEY, Defendant and Appellant.

Leo R. Friedman for Defendant and Appellant.

Stanley Mosk, Attorney General, John S. McInerny, John F. Foran and Derald E. Granberg, Deputy Attorneys General, for Plaintiff and Respondent.

PETERS, J.—Defendant appeals from a judgment of conviction entered upon a jury verdict finding him guilty of a violation of Penal Code section 288a,[1] and of a prior felony conviction.

The only witness who testified for the prosecution[2] was a woman named Joan. She testified that in April of 1960 the defendant's brother employed her to play a part in a motion picture to be filmed in a San Francisco studio; that she went to the studio; that the picture was taken; that in making this picture, in addition to several other sexual activities, she voluntarily engaged in an act of oral copulation with the sexual organ of defendant.

---

[1] That section provides, in part: ''Any person participating in an act of copulating the mouth of one person with the sexual organ of another is punishable by imprisonment in the state prison. . . .''

[2] Defendant did not testify, nor did he offer any evidence in his defense.

A film purporting to show these activities was produced by the prosecution. Joan testified that she had seen portions of the film, and that those portions accurately represented what took place during the making of the film. Over objection, it was introduced into evidence and was shown to the jury. In response to the question: "Is that the film of the events in which you participated on this particular date at the Beaumont Studio," Joan said "yes." She also testified that the defendant was the male in the film whose face was covered with a coat of dark grease, whose hair was covered with a cloth turban, and with whom frequent acts in violation of Penal Code section 288a were shown.

Joan was, of course, an accomplice. (*People* v. *McRae,* 31 Cal.2d 184, 186 [187 P.2d 741] ; *People* v. *Tenner,* 67 Cal. App.2d 360, 363 [154 P.2d 9] ; *People* v. *Brown,* 25 Cal.App. 2d 513, 515 [77 P.2d 880]. Cf. *People* v. *Willis,* 129 Cal.App. 2d 330, 334 [276 P.2d 853] ; *People* v. *Peterman,* 103 Cal.App. 2d 322, 325 [229 P.2d 444] ; *People* v. *Battilana,* 52 Cal.App. 2d 685, 695 [126 P.2d 923].) As such her testimony must be corroborated.[3] This is a strict requirement, much stricter than found in many other states.[4] It is based on the fear that an accomplice may be motivated to falsify his testimony in the hope of securing leniency for himself. (See generally 7 Wigmore, Evidence (3d ed. 1940) § 2057, pp. 322-325.) In 19 California Jurisprudence 2d, Evidence, section 498, page 267, it is pointed out, with the citation of many cases: "The court has no discretion to deviate from the requirement of the statute, and the rule applies although the jurors are convinced to a moral certainty of the guilt of the accused. They may not convict without the requisite corroborative evidence. . . . In fact, although the jurors are the sole appraisers of the facts proved by the evidence, yet if there is no evidence, other than the testimony of an accomplice, tending to connect the de-

[3]Section 1111 of the Penal Code provides in part: "A conviction can not be had upon the testimony of an accomplice unless it be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof."

[4]In about one half of the states, uncorroborated testimony of an accomplice is sufficient to sustain a conviction. (See 7 Wigmore, Evidence (3d ed. 1940) § 2056, pp. 312-322.) In England the defendant is simply entitled to an instruction that accomplice testimony should be viewed with caution. It is clear, however, that in England and in some states uncorroborated accomplice testimony is sufficient to sustain a judgment of conviction. (See Williams, *Corroboration—Accomplices* (1962) Crim. L. Rev. 588, 592.)

fendant with the offense charged, the judge may advise an acquittal. . . . The requirement is based on the theory that accomplice testimony comes from a tainted source, is usually given in the hope or expectation of lenience or immunity, is untrustworthy, and should be viewed with caution.''

The only evidence offered to corroborate Joan's testimony was the film, and her testimony was the only foundation offered for its admission into evidence. Defendant contends that it was error to admit the film into evidence because the testimony of Joan, as that of an accomplice, was not competent foundation evidence. This contention is without merit.

The fact that a witness is an accomplice does not affect the admissibility or competency of his testimony; it goes only to its weight and credibility. (19 Cal.Jur.2d, Evidence, § 497, p. 265.) In *People* v. *Santos*, 134 Cal.App. 736 [26 P.2d 522], where a knife was introduced into evidence upon a foundation laid by an accomplice, it was said at page 746: ''We assume [in considering the objection to the introduction of the knife into evidence] that appellant has in mind the provision of section 1111 of the Penal Code. Said section merely prohibits a conviction 'upon the testimony of an accomplice unless it is corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense.' Said section does not deal with the admissibility of evidence but merely with the sufficiency of the entire evidence to sustain a conviction. Even assuming that . . . [the accomplice's] testimony identifying the knife was uncorroborated, it was, nevertheless, admissible.'' (See *People* v. *Trujillo*, 32 Cal.2d 105, 116 [194 P.2d 681]; *People* v. *Flood*, 41 Cal.App. 373, 377 [182 P. 766]. Cf. *People* v. *Rissman*, 154 Cal.App.2d 265, 276 [316 P.2d 60]; *People* v. *Gordon*, 71 Cal.App.2d 606, 629-630 [163 P.2d 110].) The fact that the foundation for the introduction of the film into evidence was laid by an accomplice is not, therefore, a ground for objecting to the introduction of the film into evidence.

Defendant also contends that the film should not have been admitted into evidence because Joan authenticated only portions of the film. It is claimed that there was no showing that the portions which she had seen portrayed the commission of acts violating Penal Code section 288a by an identifiable male, and therefore there was no foundation for the admission of those portions into evidence. There is no merit in this contention. It is true that Joan testified that there were two separate sequences or scenes in the film and

that she had only seen part of it. But analysis of the film discloses that in each portion or scene an act of oral copulation with an identifiable male is portrayed. Therefore, regardless of which portion Joan referred to as accurately representing what took place, there was portrayed the illegal act charged with an identifiable male participant.

█ It is well settled that the testimony of a person who was present at the time a film was made that it accurately depicts what it purports to show is a legally sufficient foundation for its admission into evidence. (*Berkovitz* v. *American River Gravel Co.*, 191 Cal. 195, 201-202 [215 P. 675]; *People* v. *Ah Lee*, 164 Cal. 350, 352 [128 P. 1035]; *People* v. *Durrant*, 116 Cal. 179, 212-213 [48 P. 75]; *Heiman* v. *Market St. Ry. Co.*, 21 Cal.App.2d 311, 314-315 [69 P.2d 178]; *People* v. *Hayes*, 21 Cal.App.2d 320 [71 P.2d 321]. See McCormick, Evidence (1954) § 181, pp. 387-389; 3 Jones, Evidence (5th ed. 1958) § 627, pp. 1193-1194; *ibid.* § 630, pp. 1198-1199; 3 Wigmore, Evidence (3d ed. 1940) § 794, pp. 186-189; *ibid.* § 798a, pp. 203-208; Note 62 A.L.R.2d 686.) █ The film was, therefore, properly admitted into evidence.

Defendant's main contention is that the film may not be used to corroborate Joan's testimony because its admission into evidence rests solely upon her foundation testimony. Under these circumstances, it is argued, the film is not "other evidence" within the meaning of Penal Code section 1111.

According to Professor Wigmore, a photograph is no more than the nonverbal expression of the witness upon whose foundation testimony its authenticity rests. (3 Wigmore, Evidence (3d ed. 1940) § 790, pp. 174-175; *ibid.* § 792, p. 178; *ibid.* § 793, p. 186. See *International Union etc.* v. *Russell*, 264 Ala. 456 [88 So.2d 175, 186, 62 A.L.R.2d 669, 692].) It is merely that witness' testimony in illustrated form; a "pictorial communication of a qualified witness who uses this method of communication instead of or in addition to some other method." (3 Wigmore, Evidence (3d ed. 1940) § 793, p. 186.) If this theory were accepted, it would necessarily follow that the film in this case does not fulfill the corroboration requirement. An accomplice cannot, of course, corroborate his own testimony. (Cf. *People* v. *Clapp*, 24 Cal. 2d 835, 837 [151 P.2d 237]; *People* v. *Goldstein*, 146 Cal.App. 2d 268, 272 [303 P.2d 892].)

Other authorities disagree. They urge that once a *proper foundation* has been established as to the accuracy and authen-

ticity of a photograph, "it speaks with a certain probative force in itself." (Scott, Photographic Evidence (1942) § 601, p. 476.) "[P]hotographs may, under proper safeguards, not only be used to illustrate testimony, but also as photographic or silent witnesses who speak for themselves. . . . [A] picture taken with adequate equipment under proper conditions by a skilled photographer is itself substantive evidence to be weighed by the jury." (Gardner, *The Camera Goes to Court* (1946) 24 N.C.L.Rev. 233, 245. See *State* v. *Goyet,* 120 Vt. 12 [132 A.2d 623, 631]; *A. & N. Dept. Stores* v. *Retail etc.* (1950) 2 D.L.R. 850; McKelvey, Evidence (5th ed. 1944) 663-664.)

Until now, this court has not been called upon to state the theory upon which photographs are admitted into evidence. (See Comment (1957) 8 Hastings L.J. 310.) In doing so we recognize that photographs are useful for different purposes. When admitted merely to aid a witness in explaining his testimony they are, as Wigmore states, nothing more than the illustrated testimony of that witness. But they may also be used as probative evidence of what they depict. Used in this manner they take on the status of independent "silent" witnesses. (See McKelvey, Evidence (5th ed. 1944) § 379, p. 668.)

An example of a photograph which is probative in itself is found in *People* v. *Doggett,* 83 Cal.App.2d 405 [188 P.2d 792], in which convictions of violating Penal Code section 288a were affirmed. The only evidence of the crime was a photograph showing the defendants committing an act of sexual perversion. This photograph was introduced into evidence although there was no testimony by any eyewitness that it accurately depicted what it purported to show. There was, however, other evidence of when, in point of time, the picture was taken, the place where it was taken and that the defendants were the persons shown in the picture. Furthermore, there was testimony by a photographic expert that the picture was not a composite and had not been faked but was a true representation of a "pure" negative. Upon this foundation, it was held that the photograph was admissible in evidence. (Cf. *People* v. *Mehaffey,* 32 Cal.2d 535, 554-555 [197 P.2d 12]; *People* v *Mitman,* 122 Cal.App.2d 490, 495 [265 P.2d 105]; *People* v. *Batsford,* 91 Cal.App.2d 607 [205 P.2d 731].)

Since no eyewitness laid the foundation for the picture's admission into evidence in the *Doggett* case, the picture necessarily was allowed to be a silent witness; to "speak for itself." It was not illustrating the testimony of a witness.

This seems to be a sound rule. Similarly, X-ray photographs are admitted into evidence although there is no one who can testify from direct observation inside the body that they accurately represent what they purport to show.[5] (*Sinz* v. *Owens*, 33 Cal.2d 749, 759-760 [205 P.2d 3, 8 A.L.R.2d 757]; *Wilburn* v. *U.S. Gypsum Co.*, 16 Cal.App.2d 111 [60 P.2d 188]; *Sim* v. *Weeks*, 7 Cal.App.2d 28, 40-41 [45 P.2d 350]. See *DeMartini* v. *McDonnell*, 14 Cal.App.2d 405 [58 P.2d 170]; 3 Jones, Evidence (5th ed. 1958) § 630, p. 1198.)

There is no reason why a photograph or film, like an X-ray, may not, in a proper case, be probative in itself. To hold otherwise would illogically limit the use of a device whose memory is without question more accurate and reliable than that of a human witness. It would exclude from evidence the chance picture of a crowd which on close examination shows the commission of a crime that was not seen by the photographer at the time. It would exclude from evidence pictures taken with a telescopic lens. It would exclude from evidence pictures taken by a camera set to go off when a building's door is opened at night. (See Scott, Photographic Evidence (1942) § 197, pp. 211-213; Crim L. Rev. (1957) p. 708.) We hold, therefore, that a photograph may, in a proper case, be admitted into evidence not merely as illustrated testimony of a human witness but as probative evidence in itself of what it shows.

But because the film was properly admitted into evidence, and because that film, if properly authenticated is of itself evidence of what it depicts, it does not follow that the film can corroborate the testimony of the sole authenticating witness when she is an accomplice. To satisfy the requirement of Penal Code section 1111, "[T]he corroborative evidence . . . must be considered without the aid of the testimony which is to be corroborated and . . . it is not sufficient if it requires the interpretation and direction of such testimony in order to give it value." (*People* v. *MacEwing*, 45

---

[5]Wigmore recognizes the apparent inconsistency between his pictorial testimony theory of photographs and the introduction of X-rays. He reasons, however, that once the instrument or process is known to be trustworthy, as is the case with X-rays, "it follows that a photograph of its images would always be receivable like any other photograph." (3 Wigmore, Evidence (3d ed. 1940) § 795, p. 190.) Other writers have not been convinced by this analysis, however, and refer to the admission of X-rays as an example of a photograph speaking for itself. (See Scott, Photographic Evidence (1942) § 601, p. 476; Gardner, *The Camera Goes to Court* (1946) 24 N.C.L.Rev. 233, 243-245.)

Cal.2d 218, 225 [288 P.2d 257]. See also *People* v. *Reingold,* 87 Cal.App.2d 382, 393 [197 P.2d 175] ; *People* v. *Wynkoop,* 165 Cal.App.2d 540, 545 [331 P.2d 1040].) In other words, the section requires evidence apart from that of the accomplice which tends to instill trust in the inherently suspect testimony of the accomplice.[6] (See *People* v. *Lyons,* 50 Cal.2d 245, 257 [324 P.2d 556].) The film in the instant case can fulfill this function only if it is assumed to be authentic. Since the film cannot ''speak for itself'' as to its own authenticity, reliance must first be placed in the veracity of Joan that it is accurate before it can supply any corroboration. This is the very reliance which section 1111 tells us cannot be assumed but reason for which must be found elsewhere.

No photograph or film has any value in the absence of a proper foundation. It is necessary to know when it was taken and that it is accurate and truly represents what it purports to show. It becomes probative only upon the assumption that it is relevant and accurate. This foundation is usually provided by the testimony of a person who was present at the time the picture was taken, or who is otherwise qualified to state that the representation is accurate. In addition, it may be provided by the aid of expert testimony, as in the *Doggett* case, although there is no one qualified to authenticate it from personal observation. When authenticated by a witness from personal observation its admission into evidence presumes confidence in that witness' veracity. Although Penal Code section 1111 does not bar the use of accomplice testimony for purposes of admitting the film into evidence, it does fix a stringent standard for purposes of the sufficiency of the evidence to sustain a conviction. Just as we do not question the competency of an accomplice to testify, we do not question his competency to lay the foundation for the admission of a photograph into evidence. But as Penal Code section

---

[6]If it were necessary for Joan to identify the male participant in the film as the defendant, this test would not have been satisfied and no further discussion of the point would be necessary. But as already pointed out, the disguise was not effective. Comparing the height, weight, build and visible facial features of the man portrayed in the film with those of the defendant, the members of the jury could reasonably make the identification for themselves. In fact, the record shows that the jury relied heavily upon their independent identification of the male in the film. After deliberating for over two hours, the jury requested that the defendant stand before them without his glasses. Following 45 minutes' more deliberation, they requested a second viewing of part of the film. It then required only eight minutes more to decide upon a verdict of guilty.

1111 prohibits conviction upon the testimony of an accomplice, so it also prohibits conviction upon evidence the foundation for which was supplied by an accomplice. For a photograph to qualify for admission into evidence the source of the authentication is immaterial. But section 1111 requires that to sustain a conviction the source of the authentication of the corroborating evidence must be independent of the accomplice. To hold otherwise would allow the prosecution to pull itself up by its own bootstraps.

It follows that although the film is sufficient corroboration if authenticated by a source independent of the accomplice, it cannot here be used to corroborate Joan's testimony. Since its value rests upon the testimony of the accomplice, it is not "other evidence" within the meaning of Penal Code section 1111. This result is compelled by the code section. The judgment must therefore be reversed.

The judgment is reversed.

Gibson, C. J., Traynor, J., Schauer, J., McComb, J., Tobriner, J., and Peek, J., concurred.