Filed 8/6/25  Walton v. Willow Parks Apts CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| JOICE WALTON,<br><br>　　　Plaintiff and Appellant,<br><br>　　　v.<br><br>WILLOW PARKS APTS, LLC et al.,<br><br>　　　Defendants and Respondents. | H051432<br>(Santa Clara County<br>Super. Ct. No. 18CV329332)<br><br>ORDER MODIFYING OPINION,<br>DENYING PETITION FOR<br>REHEARING;<br>NO CHANGE IN JUDGMENT |

BY THE COURT:

It is ordered that the opinion filed herein on July 10, 2025, be modified as follows, to correct a typographical error:

On page 4, the first full paragraph shall now read:

"Third, Willow Parks moved to exclude any evidence of corrective conduct or procedures after the accident. Specifically, Willow Parks argued that Walton should be precluded from introducing evidence depicting the post-accident staircase with the adjacent bush removed, pursuant to Evidence Code section 1151, which provides: 'When, after the occurrence of an event, remedial or precautionary measures are taken, which, if taken previously, would have tended to make the event less likely to occur, evidence of such subsequent measures is inadmissible to prove negligence or culpable conduct in connection with the event.' "

There is no change in the judgment.  The petition for rehearing is denied.

1

_____
               Wilson, J.


WE CONCUR:




_____
       Grover, Acting P. J.




_____
       Lie, J.




*Walton v. Willow Parks Apts, LLC et al.*
H051432

Filed 7/10/25  Walton v. Willow Parks Apts CA6 (unmodified opn)

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| JOICE WALTON,<br><br>  Plaintiff and Appellant,<br><br>  v.<br><br>WILLOW PARKS APTS, LLC et al.,<br><br>  Defendants and Respondents. | H051432<br>(Santa Clara County<br>Super. Ct. No. 18CV329332) |

Joice Walton was injured in July 2016 when she fell on an outdoor staircase at the San Jose apartment complex where she lived.  Walton sued the building owners, alleging that her injuries were caused by a dangerous condition of property—specifically a shadow cast on the staircase from an adjacent bush partially obscuring a landscaping light.  The matter went to trial, after which the jury returned a verdict for defendants, finding no dangerous condition.

On appeal, Walton argues the trial court abused its discretion by excluding from evidence a photograph she took of the staircase the night after she fell and a subsequent photograph of the staircase after the bush had been removed.  Walton also contends the trial court abused its discretion by precluding her from testifying that the shadow was caused by the bush, while allowing the defense expert to testify to the contrary.

We find no prejudicial error and we affirm.

# I. FACTUAL AND PROCEDURAL BACKGROUND

## A. *The injury*

Walton has lived at the Willow Parks Apartment complex in San Jose for more than 30 years.

On the evening of July 4, 2016, she had been meeting with a colleague, Paul Smith, in the living room of her apartment. After they finished their meeting, Walton escorted Smith out of her apartment. The two walked through the lobby and out the front door of the building towards a concrete staircase that leads down to a sidewalk and street below.

Walton initially testified at her deposition that it was approximately 7:00 p.m. or 8:00 p.m. when she and Smith left the apartment building that evening. As discussed further below, Walton subsequently testified at trial that "it might have been later."

Walton and Smith began descending the 10-step staircase, Walton holding onto the handrail on the left side, and Smith on the right side. According to Walton, "all of a sudden," she looked down and saw a "huge black hole" that covered the bottom four steps of the staircase. It "scared the heck" out of her—she did not know what it was, and she lunged forward, or "jumped," to avoid it.

Walton testified that she landed on both her knees at the bottom of the staircase on the cement. She felt "a bit of pain" from the jarring in her knees, and she was embarrassed and humiliated. After the fall, Walton got up and she and Smith walked across the street to his car. Walton then walked back to her apartment and went to sleep.

The next day, Walton felt pain when she woke up and noticed a "horizontal gash" and swelling in her knee. Later that evening, around the same time as she had fallen the night before, Walton walked back to the staircase "to see what happened to cause [her] to fall." She observed a "big black shadow" on the stairs, as well as a bush next to the left side of the stairwell. Walton later testified at trial that, aside from the shadow, there were no defects or anything else wrong with the staircase itself.

A few days after the fall, Walton visited her doctor for a preexisting appointment, at which they discussed her knee pain as well. After examining Walton, the doctor prescribed Neosporin for an "abrasion" on her knee, and ibuprofen for the pain, and referred her to an orthopedist.

Walton testified that her knee pain proceeded to worsen over time, despite ongoing physical therapy and periodic cortisone injections. In April 2017, Walton suffered another fall at the Willow Parks Apartment complex. On that occasion, Walton was ascending a staircase from the building's parking garage, when her knees buckled. She tried to break her fall, jamming her arm and hitting both of her knees on the ground.

Walton eventually had knee replacement surgery for both knees and rotator cuff surgery for her shoulder after the complaint was filed.

### B. Complaint and motions in limine

Walton filed suit on June 4, 2018, naming Willow Parks Apartments, LLC and its holding company Cirrus Asset Management, Inc. as defendants (together, Willow Parks). The complaint set forth causes of action for premises liability and negligence, alleging that Walton had fallen twice on stairs located at the apartment complex, severely injuring her knees and requiring surgery.

The matter proceeded to trial in March 2023. Prior to jury selection, the parties filed various motions in limine relevant to this appeal. First, Willow Parks moved to prohibit any testimony, argument, or evidence—without qualified expert testimony—as to the nature of any alleged defects of the lighting or walking surface of the premises where Walton claimed to have fallen. As Willow Parks argued, Walton was expected to offer evidence of a shadow on the staircase caused by lighting, but had no expert to testify to that subject.

Second, Willow Parks moved to exclude any *post hoc* photos of the accident scene by Walton that lacked foundation. Willow Parks stated that Walton was expected to offer photographic evidence as to the lighting and shadows of the staircase at the time she fell.

3

However, they argued, the photos were not taken at the time of the accident and were not taken by any retained accident reconstructionist or other expert.

Third, Willow Parks moved to exclude any evidence of corrective conduct or procedures after the accident. Specifically, Willow Parks argued that Walton should be precluded from introducing evidencing depicting the post-accident staircase with the adjacent bush removed, pursuant to Evidence Code section 1151, which provides: "When, after the occurrence of an event, remedial or precautionary measures are taken, which, if taken previously, would have tended to make the event less likely to occur, evidence of such subsequent measures is inadmissible to prove negligence or culpable conduct in connection with the event."

Fourth, Walton moved for an order limiting the testimony of Willow Parks's biomechanical engineering and accident reconstruction expert Kirsten White on certain topics. Specifically, Walton sought to preclude White from offering opinions that were not disclosed at her deposition regarding the landscaping light under the bush next to the staircase at the time Walton fell, or opinions regarding the type of light emanating from the light and how it would cast shadows on the staircase.

The trial court granted these motions, as explained in further detail below.

### C. Trial

Witness testimony commenced on March 22, 2023.

Walton testified to her two staircase falls at the apartment complex, and her knee pain and surgeries, as described above. With respect to the time of her first fall on the staircase, Walton testified that, although she had stated at her deposition the accident had occurred between 7:00 p.m. and 8:00 p.m., "after some recollection over time, it might have been darker, it might have been later." Further, as to her first fall on July 4, 2016, Walton alleged there was a shadow across the lower part of the stairs that obstructed her vision in some manner and caused her to stumble forward and fall.

4

Willow Parks's expert Kirsten White testified that sunset on July 4, 2016, was at 8:32 p.m., while the end of civil twilight was 9:02 p.m. Civil twilight, White explained, is defined as the "period of time after the sun goes beneath the horizon when there's sufficient ambient light for people to perform … ordinary activities outdoors," or "when the illumination level is sufficient that most ordinary outdoor activities can be done without artificial lighting after sunset."

White also relied on various Google Earth images of the staircase and the apartment complex from March 2015 and January 2016, as well as a Google Earth street-view image of the staircase and surrounding areas from May 2016.

White noted that the images depicted a bush next to the left side of the staircase, as well as a landscaping light underneath it, and she then testified as to where the light could project and where it could fall. According to White, "because the landscaping light is shorter than the steps, it's underneath them, it's not going to cast light on the top of the steps." As a result, "it's not going to cast a shadow on the top of those steps because it's underneath," and "it cannot cast a shadow."

Following the close of evidence on March 24, 2023, the jury returned its verdict later that day. The jury answered the questions on the special verdict form as follows: "(1) Did Willow Park Apartments, LLC own or control the property? Yes. (2) Was the property in a dangerous condition at the time of the injury? No."

Judgment was entered on July 10, 2023. Walton timely appealed.

## II. DISCUSSION

On appeal, Walton argues that the trial court abused its discretion by: (1) excluding the photograph she took of the outdoor staircase the night after she fell; (2) excluding the photograph she took from the same location, after the bush next to the staircase had been removed; and (3) precluding her from testifying that the shadow on the staircase was cast by the bush, yet allowing White to testify that it was not.

5

### A. Standard of review

We review a trial court's evidentiary rulings for abuse of discretion. (*San Lorenzo Valley Community Advocates for Responsible Education v. San Lorenzo Valley Unified School District* (2006) 139 Cal.App.4th 1356, 1414.) "A ruling that constitutes an abuse of discretion has been described as one that is 'so irrational or arbitrary that no reasonable person could agree with it.' " (*Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 773 (*Sargon*).)

Notwithstanding that, a trial court's discretion is not unlimited—rather, "it must be exercised within the confines of the applicable legal principles." (*Sargon, supra*, 55 Cal.4th at p. 773.) " 'The discretion of a trial judge is not a whimsical, uncontrolled power, but a legal discretion, which is subject to the limitations of legal principles governing the subject of its action, and to reversal on appeal where no reasonable basis for the action is shown.' " (*Id.*, quoting 9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 364, p. 420.)

" 'The scope of discretion always resides in the particular law being applied, i.e., in the "legal principles governing the subject of [the] action...." Action that transgresses the confines of the applicable principles of law is outside the scope of discretion and we call such action an 'abuse' of discretion. [Citation.] ... [¶] The legal principles that govern the subject of discretionary action vary greatly with context. [Citation.] They are derived from the common law or statutes under which discretion is conferred.' " (*Sargon, supra*, 55 Cal.4th at p. 773, quoting *City of Sacramento v. Drew* (1989) 207 Cal.App.3d 1287, 1297–1298.)

### B. Analysis

#### 1. Photographs

Walton argues the trial court abused its discretion by excluding from evidence two specific photographs she took—the photograph of the staircase the night after her first

6

accident, and a subsequent photograph of that staircase after the adjacent bush had been removed.

### *(a) Background*

Willow Parks argued in support of its motion in limine that the first photograph had not been taken at the same time the accident occurred, and therefore did not depict the scene of the accident at the time of the accident. Walton had stated at her deposition that she had taken the photograph the night after she fell—July 5, 2016—at "approximately" the same time as the fall, which she testified occurred between 7:00 p.m. and 8:00 p.m. However, Willow Parks argued, the photograph "looks like it was taken later at night with no natural sunlight with only … light from artificial sources casting the shadow. …" As their expert would testify, at the time the accident occurred—between 7:00 p.m. and 8:00 p.m. in the middle of summer—"there's still ambient sunlight, as we all know."

Counsel for Walton confirmed at the hearing that the accident occurred between 7:00 p.m. and 8:00 p.m., and that the photograph was taken "the very next day at approximately the same time."

The trial court agreed with Willow Parks, stating that "it doesn't look like 7:00 to 8:00 o'clock on a July day." The court then asked if there was a time stamp for the picture, to which Walton's counsel replied, "Would we be able to get back to the Court with the time stamp if we're able to locate it"? The court replied, "Sure," adding that "I don't think this is 8:00 o'clock or 7:00 o'clock on a summer day, the lighting that we would see. This looks much darker. … So I don't think this is a fair depiction of a summer day, of a summer evening in July."

Counsel responded: "And we would like to provide that. We'll see if we can find it by the end of the day." The following day, Walton did not provide any time stamp. The court stated: "at this time, the photos are not being admitted because I

7

haven't received anything further to show that they were at the time or that they are more probative than prejudicial. So, given my ruling yesterday, they're not going to be admitted at this time."

The trial court also expressed concern with the vantage point of the photograph, noting that it appeared to be taken from the center or right side of the top of the staircase, while Walton had testified at her deposition that she descended the left side, holding onto the handrail. As the court explained, "that could make a difference on the shadows also. It's not the perception she had because this is from the middle."

With respect to the second photograph—depicting the staircase after the adjacent bush had been removed—the trial court held it was inadmissible pursuant to the court's order granting Willow Parks's motion in limine to exclude evidence of subsequent remedial conduct after the accident. The court explained that "the feasibility of the removal can be asked without referring to it being -- that it was removed because I agree remedial corrective conduct generally is excluded, and, you know, if you just ask general questions about the feasibility of removal, that's separate and apart. It's not mentioning that it's already been removed or that you removed it subsequently."

The court added later that the photograph also suffered the same infirmity as the first one—it did not indicate when it was taken.

In conclusion, the trial court stated: "All right. So at this time, I'm not letting in the photos until I have a foundation laid that they were taken at the time, around the time and date of the accident."

### (b) Evidentiary standards

Our Supreme Court has articulated the standards for authenticating and admitting photographs into evidence.

Photographs are considered writings as defined by the Evidence Code. (*People v. Goldsmith* (2014) 59 Cal.4th 258, 266 (*Goldsmith*); Evid. Code, § 250.) "Authentication of a writing, including a photograph, is required before it may be admitted in evidence."

8

(*Goldsmith, supra,* at p. 266; Evid. Code, §§ 250, 1401.)  "Authentication is to be determined by the trial court as a preliminary fact [Evid. Code, § 403, subd. (a)(3)] and is statutorily defined as 'the introduction of evidence sufficient to sustain a finding that it is the writing that the proponent of the evidence claims it is' or 'the establishment of such facts by any other means provided by law.' "  (*Goldsmith, supra,* at p. 266; Evid. Code, § 1400).

"The statutory definition ties authentication to relevance. As explained by the California Law Revision Commission's comment to [Evidence Code] section 1400, '[b]efore any tangible object may be admitted into evidence, the party seeking to introduce the object must make a preliminary showing that the object is in some way relevant to the issues to be decided in the action. When the object sought to be introduced is a writing, this preliminary showing of relevancy usually entails some proof that the writing is authentic—*i.e.,* that the writing was made or signed by its purported maker." (*Goldsmith, supra,* 59 Cal.4th at p. 266 ["authentication is essentially a subset of relevance"].)

The "first step" in authenticating a photograph "is to determine the purpose for which the evidence is being offered. The purpose of the evidence will determine what must be shown for authentication, which may vary from case to case. [Citation.] The foundation requires that there be sufficient evidence for a trier of fact to find that the writing is what it purports to be, i.e., that it is genuine for the purpose offered." (*Goldsmith, supra*, 59 Cal.4th at p. 267, citing *People v. Valdez* (2011) 201 Cal.App.4th 1429, 1434–1435.)

### *(c)  Analysis*

With respect to the first photograph—depicting the staircase the night after her first accident—Walton argues that she "could have and would have laid a proper foundation" for the photograph, because she "was prepared to testify that she personally took the photograph, she took it the day after the accident at approximately the same time

9

in which her fall occurred, and that the photo correctly depicted how the stairs and the shadow looked at the time of her fall." According to Walton, that testimony by itself would have been sufficient to authenticate the photograph under the principle that "[t]he essential element is that it be shown in some way that the picture does correctly depict what it purports to show, in other words that it be verified or authenticated as a genuine picture of what it purports to depict," citing *People v. Doggett* (1948) 83 Cal.App.2d 405, 409. Further, she states, "a photo may be authenticated by witness testimony that it is an accurate reproduction of what it purports to be," citing *People v. Bowley* (1963) 59 Cal.2d 855, 859.

Walton also argues that her deposition testimony that the accident had occurred between 7:00 p.m. and 8:00 p.m. was merely an approximation and that at trial she "was prepared to testify, and did testify, that she didn't know exactly what time the fall occurred."

Willow Parks argues that the photograph "lacked foundation because it was not an accurate representation of what Walton purported it to be: the left side of the staircase between 7:00 p.m. and 8:00 p.m. on July 4, 2016." According to Willow Parks, the trial court correctly concluded that the photograph "did not depict 'the lighting that we would see' at 7:00 p.m. or 8:00 p.m.—i.e., it was not 'a fair depiction of a summer day, of a summer evening in July' because it looked 'much darker.' "

We need not resolve this dispute because we conclude that, even if the trial court abused its discretion by excluding the photograph, Walton has failed to establish any prejudice. "The erroneous exclusion of evidence does not require reversal except where the error caused a miscarriage of justice." (*San Diego Gas & Electric Company v. Schmidt* (2014) 228 Cal.App.4th 1280, 1301–1302; Cal. Const., art. VI, § 13.) A miscarriage of justice occurs when, "after an examination of the entire cause, including the evidence," the reviewing court believes "it is reasonably probable that a result more

10

favorable to the appealing party would have been reached in the absence of the error." (Cal. Const., art. VI, § 13.)

Moreover, an appellant must affirmatively show prejudicial error. (*Scheenstra v. California Dairies, Inc.* (2013) 213 Cal.App.4th 370, 403.) To satisfy that burden, an "appellant must provide an argument and legal authority to support [its] contentions. This burden requires more than a mere assertion that the judgment is wrong. 'Issues do not have a life of their own: If they are not raised or supported by argument or citation to authority, [they are] ... waived.' " (*Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852 (*Benach*).)

Walton has failed to satisfy this burden here. Instead, she merely asserts that "absent the trial court's evidentiary errors, it is reasonably probable that the result would have been more favorable to plaintiff." With respect to the first photograph, she fails to articulate any prejudice resulting solely from its exclusion, arguing only that the trial court's errors were cumulatively prejudicial: "had the jury been able to hear plaintiff testify that the large black shadow on the steps was caused by the bush adjacent to the steps, which partially blocked the landscaping light, and had it been able to view the two photos which would have confirmed plaintiff's testimony as to the shadow, and contrasted the very different appearance of the steps and shadows after the removal the bush, it is well more than reasonably probable, and certainly more than an abstract possibility, that the jury would have found that the placement of the light and the bush created a dangerous condition on the stairs."

Because, as we explain in the sections that follow, we find no abuse of discretion or other error, there could be no cumulative prejudice even if we concluded the trial court's exclusion of the first photograph was an abuse of discretion. Yet because Walton has failed to explain how or why admitting the first photograph, by itself, would make it reasonably probable that a result more favorable to her would have been reached, we

11

consider the argument forfeited. (Cal. Const., art. VI, § 13; *Benach, supra,* 149 Cal.App.4th at p. 852.)[1]

With respect to the second photograph—depicting the staircase after the adjacent bush had been removed—Walton argues the trial court abused its discretion for the same reasons as the first photograph. That is, she contends that because she was "ready, willing and able to provide the evidence required to authenticate the photograph," the trial court should have admitted it.

However, Walton ignores the central basis of the trial court's ruling excluding this photograph—the fact that it purported to depict the accident scene after subsequent remedial action had been taken, in violation of Evidence Code section 1151. Walton did not challenge that aspect of the court's ruling in her opening brief.

In her reply brief, Walton argues for the first time that the photograph was not made inadmissible by Evidence Code section 1151 because it was not offered to prove negligence or culpable conduct, but rather "to show <u>causation</u>, that the shrub, which blocked the ground light, was the <u>cause</u> of the shadow which fell on the stairs."

We consider the argument forfeited, as Walton did not raise it in her opening brief. (*Claudio v. Regents of the University of California* (2005) 134 Cal.App.4th 224, 230 [review limited to issues adequately raised and briefed]; *Neighbours v. Buzz Oates*

---

[1] Nor can we conclude on our own that it is reasonably probable that a result more favorable to Walton would have been reached with the photograph in evidence. As we have summarized, Walton initially testified at her deposition that it was approximately 7:00 p.m. or 8:00 p.m. when she fell on the stairs. Although she subsequently testified at trial that "it might have been later," she acknowledged her deposition testimony on cross-examination. In other words, the trial testimony at best creates contradictory evidence regarding whether the photograph actually depicted the accident scene at the time she fell, which does not make a more favorable result "reasonably probable," as opposed to a mere "abstract possibility." (*Cassim v. Allstate Insurance Co.* (2004) 33 Cal.4th 780, 800.)

12

*Enterprises* (1990) 217 Cal.App.3d 325, 335, fn. 8 ["points raised in the reply brief for the first time will not be considered, unless good reason is shown for failure to present them before"].)

### 2. Trial testimony

Walton argues the trial court abused its discretion by precluding her from testifying that the shadow on the stairs was caused by the adjacent bush, yet allowing White to testify that it was not.

### (a) Background

As noted above, Willow Parks moved in limine to exclude lay testimony as to the nature of any alleged defects of the lighting or walking surface where Walton claimed to have fallen, including what caused the shadow Walton observed on the staircase. Willow Parks explained that its expert White would testify that, in addition to the landscaping light, there was a light across the street and a light on the exterior of the building.

The court granted the motion, explaining that Walton "can't say what the cause of the shadow was, from which light, because she doesn't know. Okay? There was a shrub. There was a shadow. I think she can say, 'There was a shrub nearby, there was a shadow there, and I fell,' or 'It caused me to be disoriented,' but not which way the shadow or which light it was coming from or whatever. Okay?" Walton's counsel replied, "Okay."

Meanwhile, Walton's motion in limine sought to preclude White from offering opinions that were not disclosed at her deposition, or opinions which pertained to how the landscaping light cast shadows on the staircase. Willow Parks did not object to the first portion of the motion, and conceded that White would not conduct any additional inspection of the light or offer testimony regarding subjects like measurements, distance, or luminosity. Nevertheless, Willow Parks argued that White should be allowed to testify regarding whether the landscaping light would cast a shadow on the staircase given the angle of the light, because she had done so at her deposition.

13

The trial court clarified its ruling as follows: "So I think that you two are clear on what she can testify about. So if she gave the opinion during the deposition about the ground light not casting the shadow, that's free to come in. But not about, you know, it wasn't that -- you know, 'It was only four inches, so it couldn't have come from the ground light. It had to come from the overhead light.' [¶] But on the other hand, if she said -- and I don't know because I haven't read the depo. If she said, 'It came from the overhead light because it was a three-foot wide shadow, and that could only come from this direction, and that's from this light,' she can opine about that."

Counsel for Walton responded: "Thank you, Your Honor."

At trial, White then testified that "because the landscaping light is shorter than the steps, it's underneath them, it's not going to cast light on the top of the steps." As a result, "it's not going to cast a shadow on the top of those steps because it's underneath," and "it cannot cast a shadow."

Walton did not object to any of White's testimony at trial.

### (b) Evidentiary standards

Evidence Code section 800 provides that "[i]f a witness is not testifying as an expert, his testimony in the form of an opinion is limited to such an opinion as is permitted by law, including but not limited to an opinion that is: (a) Rationally based on the perception of the witness; and (b) Helpful to a clear understanding of his testimony." (Evid. Code, § 800.)

Unlike an expert opinion, "the subject matter of lay opinion is 'one of such common knowledge that men of ordinary education could reach a conclusion as intelligently as the witness,' and requires no specialized background." (*People v. Chapple* (2006) 138 Cal.App.4th 540, 547, quoting *People v. Cole* (1956) 47 Cal.2d 99, 103.)

14

*(c) Analysis*

The trial court concluded that Walton could not testify to "what the cause of the shadow was, from which light, because she doesn't know." The trial court did not abuse its discretion in reaching that conclusion.

First, there were multiple potential light sources in different locations, including the landscaping light, the sun, an exterior building light, and a streetlight. Given that evidence, the trial court's determination that the cause of the shadow was not a subject of common knowledge within the meaning of Evidence Code section 800 was not so irrational or arbitrary that no reasonable person could agree with it, and it did not transgress the confines of the applicable principles of law. (*Sargon, supra*, 55 Cal.4th at p. 773.)

Walton argues that "[t]he concept that a shadow is cast when an object blocks a light source, and the shape of the shadow mimics the shape of the object, is so basic and so universally understood by lay people, that it does not require expert testimony," and that such concepts are regularly taught in pre-school and kindergarten. The trial court did not agree, however—it recognized the multiple interacting light sources and determined that, under these facts, it takes an expert to testify regarding the adequacy of the lighting. That was not an abuse of discretion.

Lastly, with respect to White's expert testimony, Walton argues that the trial court violated its own ruling on the motion in limine by allowing White "to offer 'analysis' related to the ground light, and what it could or could not illuminate, based on her review of multiple Google Earth and Google Street View photographs, all taken from various angles, on various dates and times, (none of which were taken on or near the evening of July 4, 2016), some of which had been altered, and which showed a ground light which was not even the same ground light which had been in place on July 4, 2016."

According to Walton, that constituted an abuse of discretion because: (1) it violated the court's own ruling on the motion in limine; (2) White's analysis was based

15

on unauthenticated photographs which did not depict the scene at the time of the accident; and (3) whether or not the landscaping light could have cast the shadow was within the common experience of lay people.

We decline to reach these arguments because we conclude Walton has forfeited them. As noted above, Walton did not object during the entirety of White's testimony. "It is hornbook law that a timely and specific objection is required to prevent the consideration of certain evidence; the failure to object at all waives any claim of error." (*Coit Drapery Cleaners, Inc. v. Sequoia Ins. Co.* (1993) 14 Cal.App.4th 1595, 1611, citing Evid. Code, § 353 ["A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous admission of evidence unless: (a) There appears of record an objection to or a motion to exclude or to strike the evidence that was timely made and so stated as to make clear the specific ground of the objection or motion; and (b) The court which passes upon the effect of the error or errors is of the opinion that the admitted evidence should have been excluded on the ground stated and that the error or errors complained of resulted in a miscarriage of justice."].)

Walton does not dispute that she did not object during White's testimony. Instead, she argues that her motion in limine to limit White's testimony was sufficient to preserve the objection. She contends the trial court specifically held that White "could not elaborate with measurements or any other new opinions related to the ground light because they had not been offered in her deposition but that is exactly what she did."

However, Walton does not explain in any way how White's trial testimony exceeded her deposition testimony—indeed, Walton never provided any deposition testimony to the trial court in support of her motion in limine or at the hearing.

As Willow Parks notes, citing *Kelly v. New West Federal Savings* (1996) 49 Cal.App.4th 659 (*Kelly*), without any supporting evidence to suggest what opinions had been rendered at the depositions, a court and the parties are left to guess what opinions

16

during trial may be included within the scope of the ruling. (*Kelly, supra,* at p. 670.) "Under appropriate circumstances, a motion *in limine* can serve the function of a 'motion to exclude' under Evidence Code section 353 by allowing the trial court to rule on a specific objection to particular evidence. [¶] ... [¶] In other cases, however, a motion *in limine* may not satisfy the requirements of Evidence Code section 353. For example, it may be difficult to specify exactly what evidence is the subject of the motion until that evidence is offered. Actual testimony sometimes defies pretrial predictions of what a witness will say on the stand. Events in the trial may change the context in which the evidence is offered to an extent that a renewed objection is necessary to satisfy the language and purpose of Evidence Code section 353. … In these kinds of circumstances, an objection at the time the evidence is offered serves to focus the issue and to protect the record.' " (*Kelly, supra,* at pp. 670–671, quoting *People v. Morris* (1991) 53 Cal.3d 152, 188–190 [disapproved on another ground in *People v. Stansbury* (1995) 9 Cal.4th 824, 830, fn. 1].)

To the extent Walton believed that White's testimony conflicted with the trial court's ruling on the motion in limine, she was obligated to object. Her failure to do so constitutes forfeiture.

### III.    DISPOSITION

The judgment is affirmed. Respondents may recover their costs on appeal.

17

_____
Wilson, J.

WE CONCUR:

_____
Grover, Acting P. J.

_____
Lie, J.

*Walton v. Willow Parks Apts, LLC et al.*
H051432